# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 27, 2020        Decided June 30, 2020

No. 17-1098

ALLEGHENY DEFENSE PROJECT, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

ANADARKO ENERGY SERVICES COMPANY, ET AL.,
INTERVENORS

Consolidated with 17-1128, 17-1263, 18-1030

On Petition for Rehearing En Banc

*Siobhan K. Cole* argued the cause for petitioners. With her on the joint briefs were *Natalie B. Molz*, *Elizabeth F. Benson*, and *Benjamin A. Luckett*. *Michael N. Onufrak* and *Derek O. Teaney* entered appearances.

*Mark Sabath*, *Emily C. Wyche*, *Ariel Solaski*, *Jon A. Mueller*, *Aaron Stemplewicz*, *John N. Moore*, and *Gillian R. Giannetti* were on the brief for *amici curiae* Alliance for the Shenandoah Valley, *et al.*, in support of petitioners.

*Megan C. Gibson* and *David Bookbinder* were on the brief for *amici curiae* Affected Landowners in support of petitioners.

*Brian E. Frosh*, Attorney General, Office of the Attorney General for the State of Maryland, *John B. Howard, Jr.*, Special Assistant Attorney General, *Kathleen Jennings*, Attorney General, Office of the Attorney General for the State of Delaware, *Kwame Raoul*, Attorney General, Office of the Attorney General for the State of Illinois, *Maura Healey*, Attorney General, Office of the Attorney General for the Commonwealth of Massachusetts, *Dana Nessel*, Attorney General, Office of the Attorney General for the State of Michigan, *Keith Ellison*, Attorney General, Office of the Attorney General for the State of Minnesota, *Letitia James*, Attorney General, Office of the Attorney General for the State of New York, *Robert W. Ferguson*, Attorney General, Office of the Attorney General for the State of Washington, *Gurbir S. Grewal*, Attorney General, Office of the Attorney General for the State of New Jersey, *Ellen F. Rosenblum*, Attorney General, Office of the Attorney General for the State of Oregon, *Josh Shapiro*, Attorney General, Office of the Attorney General for the Commonwealth of Pennsylvania, and *Karl A. Racine*, Attorney General, Office of the Attorney General for the District of Columbia, were on the brief for *amici curiae* the State of Maryland, *et al.*, in support of petitioners.

*Robert M. Kennedy*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *James P. Danly*, General Counsel at the time the brief was filed, and *Robert H. Solomon*, Solicitor. *Beth G. Pacella*, Deputy Solicitor, and *Anand R. Viswanathan*, Attorney, entered appearances.

*John F. Stoviak* argued the cause for intervenors. With him on the joint brief were *Elizabeth U. Witmer*, *Patrick F. Nugent*, *Kevin M. Sweeney*, *Scott Borden Grover*, and *Jesse Stuart Unkenholz*. *Pamela S. Goodwin* entered an appearance.

*Jeremy C. Marwell* and *Matthew X. Etchemendy* were on the brief for *amicus curiae* Interstate Natural Gas Association of America in support of respondent.

*Catherine E. Stetson*, *Stefan M. Krantz*, *A. Gregory Junge*, and *Sean Marotta* were on the brief for *amicus curiae* TC Energy Corporation in support of respondent.

*Megan E. Vetula*, *Brett K. White*, *Scott A. Keller*, and *Marcia Hook* were on the brief for *amicus curiae* the Edison Electric Institute in support of respondent.

Before: SRINIVASAN, *Chief Judge*, and HENDERSON, ROGERS, TATEL, GARLAND, GRIFFITH, MILLETT, PILLARD, WILKINS, KATSAS, and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

Concurring opinion filed by *Circuit Judge* GRIFFITH.

Opinion concurring in the judgment and dissenting in part filed by *Circuit Judge* HENDERSON.

MILLETT, *Circuit Judge*: Before a party aggrieved by an order of the Federal Energy Regulatory Commission can obtain judicial review, that party must file an application for rehearing with the Commission. Congress directed that, if the Commission fails to act on that rehearing application within thirty days, the application may be deemed denied, allowing the aggrieved party to proceed to federal court.

The question in this case is whether the Commission can eliminate that statutorily prescribed consequence of its inaction—and, in doing so, stave off judicial review—by issuing a tolling order that takes no action on the application other than buying the Commission more time.  We hold that, under the plain statutory language and context, such tolling orders are not the kind of action on a rehearing application that can fend off a deemed denial and the opportunity for judicial review.  We therefore deny the Commission's and Intervenor's motions to dismiss the petitions filed after thirty days of Commission inaction.  On the merits, we deny the petitions for review.

**I**

**A**

The Natural Gas Act, 15 U.S.C. §§ 717 *et seq.*, requires a company seeking to build or operate a natural gas pipeline for use in interstate commerce to obtain a certificate of "public convenience and necessity" from the Federal Energy Regulatory Commission authorizing the pipeline's construction and operation.  *Id.* § 717f(c); *see Myersville Citizens for a Rural Community, Inc. v. FERC*, 783 F.3d 1301, 1307 (D.C. Cir. 2015).  The Commission "shall * * * issue[]" the certificate if it finds that the proposed project "is or will be required by the present or future public convenience and necessity."  15 U.S.C. § 717f(e).

Once the Commission issues such a certificate, the Natural Gas Act authorizes the private party holding the certificate to exercise the governmental power of eminent domain and take "the necessary right-of-way to construct, operate and maintain" the pipeline, unless the property owner agrees to its use.  15 U.S.C. § 717f(h).

A party, including an affected homeowner, who seeks to challenge the Commission's certificate order (or any other order) must first seek rehearing before the Commission as a precondition to obtaining judicial review. 15 U.S.C. § 717r(a)–(b). The proper interpretation of Section 717r(a) is at the heart of this case. Because it is quite a mouthful, we set out the relevant statutory text before discussing it in more manageable pieces:

> Any person * * * aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person * * * is a party may apply for a rehearing within thirty days after the issuance of such order. * * * Upon such application the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing. Unless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied. No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon. Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b) of this section, the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.

*Id.* § 717r(a).

As relevant to this case, here is what Section 717r(a) provides.

First, as noted, parties wishing to challenge a Commission decision cannot proceed directly to judicial review. Instead, they must first seek rehearing before the Commission. 15 U.S.C. § 717r(a) ("No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon.").

Second, Congress identified four ways in which the Commission can act upon the application for rehearing. "Upon such application the Commission shall have power to [i] grant or [ii] deny rehearing or to [iii] abrogate or [iv] modify its order without further hearing." 15 U.S.C. § 717r(a).

Third, if the Commission fails to take any of those actions "within thirty days after it is filed," the "application may be deemed to have been denied." 15 U.S.C. § 717r(a).

Fourth, even after federal court jurisdiction attaches and a petition is filed, the Commission retains the power to "modify or set aside" its findings and orders "[u]ntil the record in a proceeding [is] filed in a court of appeals." 15 U.S.C. § 717r(a); *see also Clifton Power Corp. v. FERC*, 294 F.3d 108, 111 (D.C. Cir. 2002) (explaining that identical language in the Federal Power Act, 16 U.S.C. § 825*l*(a), added by the same statute "allow[s] [the Commission] to exercise concurrent jurisdiction" with the court for that initial period of time). That provision typically affords the Commission at least an additional forty days after service of a petition for review within which to reconsider its prior order. *See* FED. R. APP. P. 17(a) (requiring an agency to "file the record with the circuit clerk within forty days after being served with a petition for review"). And the Commission can obtain even more time to act if the court of appeals grants a motion for an extension of

time to file the record. *Id*. (authorizing the court to "shorten or extend the time to file the record").

Finally, Section 717r(b) authorizes judicial review in this court or in the appropriate regional circuit to "[a]ny party to a proceeding under [the Natural Gas Act] aggrieved by an order issued by the Commission in such proceeding," 15 U.S.C. § 717r(b), as long as the party "made application to the Commission for a rehearing," *id.* § 717r(a). The party must then file a petition for review "within sixty days after the order of the Commission upon the application for rehearing[.]" *Id.* § 717r(b).

**B**

**1**

In 2015, the Transcontinental Gas Pipe Line Co. ("Transco") applied to the Commission for a certificate of public convenience and necessity for its Atlantic Sunrise Project, a central aspect of which was the construction of nearly 200 miles of new pipeline in Pennsylvania. The Homeowner Petitioners—the Erb and Hoffman families—found their "much beloved home properties" in southeastern Pennsylvania in the path of the pipeline. J.A. 286.

In opposing the grant of a certificate, the Erbs told the Commission that their farm had been placed in the Lancaster Farmland Trust so as to preserve it as farmland, and that they wished to keep its "natural habitat and historical artifacts * * * undisturbed for a long, long time." J.A. 28; *see also* J.A. 75 (Erbs' comment that they "thought [their] farm would be preserved forever" given its placement in the Trust). The Erbs wrote that they "love living [t]here and enjoy[ing] all the pristine beauty [their] property has to offer." J.A. 78. They argued that the pipeline "would completely ruin the

woodlands" and damage the wetlands on their property, which together are home to "[w]hitetail deer, turkey, geese, ducks, owls, blue heron, red foxes, Pileated woodpeckers, eagles[,]" and "various types of turtles[.]"  J.A. 29.  And the pipeline would cut directly through the part of the property where one of the Erbs' sons had planned to build a home.  J.A. 28.

Similarly, the Hoffmans explained that they valued the "beauty and privacy" of their Millersville, Pennsylvania property, where their home lies among "wooded areas," "agricultural fields," and several springs that "form * * * the headwaters of a stream [that] flows through a wetland area[.]"  Motion to Intervene of Stephen and Dorothea Hoffman at 1–2, *Transcontinental Gas Pipe Line Co.*, No. CP15-138-000 (FERC April 29, 2015).  They objected that the pipeline's proposed route would mean cutting down trees and creating "large piles of bare earth exposed to the elements on a steeply-sloped hillside[,]" endangering the "stream bed and wetland area" below.  *Id.* at 3.  They also warned the Commission that their property was home to a site listed on the National Register of Historic Places, and that they were concerned that the pipeline would "plow through other sites [on their property] deserving of protection" that had not yet been identified.  J.A. 71.

The Environmental Association Petitioners opposed the Project as well.  Some of their members live along the pipeline's route and are concerned that the pipeline could contaminate their water sources.  The Environmental Associations argued that the Project would also pollute the air in their members' communities, damage "streams, wetland systems, and forests" that their members frequently use, and contribute to climate change by spurring gas drilling projects.  In addition, the Environmental Associations questioned the public need for the Project, pointing to indications that the

Project was designed primarily to transport gas to export terminals for private profit, rather than to meet domestic need.

**2**

The Commission granted Transco a certificate of public convenience and necessity for the Project on February 3, 2017. *Transcontinental Gas Pipe Line Co.*, 158 FERC ¶ 61,125 (2017) ("Certificate Order"). Less than two weeks later, Transco initiated condemnation proceedings against the Homeowners in the United States District Court for the Eastern District of Pennsylvania.

The Homeowners and Environmental Associations both filed applications for rehearing before the Commission and, as part of those applications, moved to stay the Certificate Order pending the Commission's rehearing decision. The Environmental Associations' applications were filed on February 10 and 24, 2017; the Homeowners' application was filed on March 6, 2017.

In their application, the Homeowners argued that a stay was necessary to prevent irreparable harm to "the character and aesthetics" of their "home properties." J.A. 286. In particular, they argued that building the pipeline would involve "removing topsoil, trees, shrubs, brush, roots, and large rocks, and then removing or blasting additional soil and bedrock to create a trench for the pipeline[,]" all while "contribut[ing] significantly to air pollution[.]" J.A. 286. The Environmental Associations explained that the construction would cause permanent environmental, recreational, and aesthetic harms across 1200 acres.

On March 13, 2017—the first business day after the thirty-day statutory time period for the Commission to act on the first rehearing application, *see* 18 C.F.R. § 385.2007(a)(2)—the

Commission issued what is known as a "tolling order" that applied to all three rehearing applications. That order "granted [rehearing] for the limited purpose of further consideration" for an open-ended period of time. J.A. 305 ("Tolling Order"). The Tolling Order added that, by virtue of its issuance, the timely filed rehearing applications "will not be deemed denied by operation of law." J.A. 305. The order read in full:

> Rehearings have been timely requested of the Commission order issued on February 3, 2017, in this proceeding. In the absence of Commission action within 30 days from the date the rehearing requests were filed, the request for rehearing (and any timely requests for rehearing filed subsequently) would be deemed denied. 18 C.F.R. § 385.713 (2016).
>
> In order to afford additional time for consideration of the matters raised or to be raised, rehearing of the Commission's order is hereby granted for the limited purpose of further consideration, and timely-filed rehearing requests will not be deemed denied by operation of law. Rehearing requests of the above-cited order filed in this proceeding will be addressed in a future order. As provided in 18 C.F.R. § 385.713(d), no answers to the rehearing requests will be entertained.

J.A. 305 (citation and footnote omitted).

The Tolling Order was issued by the Commission's Secretary. The Commission has delegated authority to the Secretary to "[t]oll the time for action on requests for rehearing," 18 C.F.R. § 375.302(v), but has not delegated any further "authority to act on requests for rehearing," Order Delegating Further Authority to Staff in Absence of Quorum,

82 Fed. Reg. 10,568, 10,568 n.10 (Feb. 14, 2017) ("Delegation Order").

The Commission took no action on the pending motions for a stay of the Certificate Order.

The Homeowners and Environmental Associations petitioned for review in this court of both the Certificate Order and the Tolling Order. *See* Petition for Review, No. 17-1098 (D.C. Cir. March 23, 2017); Petition for Review, No. 17-1128 (D.C. Cir. May 12, 2017). The Commission and Transco moved to dismiss the petitions for lack of jurisdiction, contending that the petitions were "incurably premature" because the Commission had not yet resolved the rehearing requests on the merits and so had not taken "final agency action" on the Certificate Order. Commission Motion to Dismiss for Lack of Jurisdiction at 5–7, No. 17-1098 (D.C. Cir. April 28, 2017) ("[The] requests for rehearing, which are pending before the Commission, rendered the Certificate Order non-final."); *see* Motion of Movant-Intervenor Transcontinental Gas Pipe Line Co. to Dismiss the Petition for Review at 9, 14, No. 17-1098 (D.C. Cir. May 12, 2017) ("This action is incurably premature because it seeks to disrupt [the Commission's] ongoing administrative review process."); *see also Clifton Power*, 294 F.3d at 111 (holding that, until a rehearing application is resolved, the Commission's decision is not final for purposes of obtaining judicial review, and any petition for review filed in court is "incurably premature").[1]

---

[1] *See also* Motion of Federal Energy Regulatory Commission to Apply Disposition of the Motion to Dismiss Filed in Docket No. 17-1098 to the Instant Petitions at 2, No. 17-1128 (D.C. Cir. June 30, 2017) (arguing that the Homeowners' petition was "incurably premature" because it challenged "non-final orders"); Motion of Movant-Intervenor Transcontinental Gas Pipe Line Co. to

Those motions were referred to the merits panel and, with the grant of rehearing en banc, are now pending before this court.

While the Homeowners and Environmental Associations waited for the Commission to resolve their rehearing applications, Transco pressed forward with its condemnation action against the Homeowners in the United States District Court for the Eastern District of Pennsylvania. In response to the Homeowners' objection that the Commission's Certificate Order was not valid, Transco told the Pennsylvania district court that, "as to this process, the eminent domain process, the [certificate] order is final" and beyond the court's jurisdiction to review. *See* Transcript of July 20, 2017 Evidentiary Hearing at 69, 80, 138–139, *Transcontinental Gas Pipe Line Co. v. Permanent Easement for 2.14 Acres*, No. 5:17-cv-00715-JLS, 2017 WL 3624250 (E.D. Pa. Aug. 23, 2017), ECF No. 55 ("Hearing Tr."); *see also Permanent Easement for 2.14 Acres*, 2017 WL 3624250, at *3–4 (district court holding that, despite the pending application for rehearing, the Certificate Order could support a condemnation action absent a stay from the Commission); *Transcontinental Gas Pipe Line Co. v. Permanent Easements for 2.14 Acres*, 907 F.3d 725, 740 (3d Cir. 2018) (affirming that holding).

Transco made that argument a mere three weeks after it and the Commission had told this court that the very same order was "non-final" agency action for purposes of the Homeowners' effort to obtain judicial review. Motion to

---

Dismiss the Petitions for Review at 9, 15, No. 17-1128 (D.C. Cir. June 30, 2017) ("The Petitions are incurably premature because they seek to disrupt [the Commission's] *ongoing* administrative review process.").

Dismiss for Lack of Jurisdiction, *supra*, at 5–7; *see* Motion of Movant-Intervenor, No. 17-1128, *supra*, at 9, 15.

In August 2017—five months after the Commission issued the Tolling Order—the district court in the eminent domain case granted partial summary judgment and a preliminary injunction to Transco, "effectively [giving] the company immediate possession" of the rights of way it needed to build its pipeline across the Homeowners' land. *See Permanent Easements for 2.14 Acres*, 907 F.3d at 728–729, 732.

The next week—nearly seven months after a motion for stay was first filed—the Commission denied the Homeowners' and Environmental Associations' requests for a stay. *Transcontinental Gas Pipe Line Co.*, 160 FERC ¶ 61,042 (2017). In so doing, the Commission dismissed the Homeowners' concerns about the destruction of their trees, the digging or blasting of a trench across their yards, and the air pollution at their properties as merely "generalized claims of environmental harm [that] do not constitute sufficient evidence of irreparable harm that would justify a stay." *Id.* at ¶ 8; *see also id.* at ¶ 8 n.17 (quoting the Homeowners' discussion of air pollution, but not addressing their objections to the imminent physical damage to their properties).

On September 5, 2017, Transco requested that the Commission issue an order authorizing it to start construction, including on the Homeowners' land. Ten days later, the Commission granted Transco a Construction Order. J.A. 324 ("Construction Order"). Transco broke ground in Pennsylvania the same day. Meanwhile, the Homeowners' and Environmental Associations' rehearing applications remained pending.

The Environmental Associations promptly sought rehearing and rescission of the Construction Order. As the

thirty-day mark approached, the Commission issued another tolling order that served only to give itself an unlimited amount of time to act while preventing judicial review of the Construction Order based on agency inaction. J.A. 326.

Finally, in December 2017—nine months after the statutory thirty-day period for action passed—the Commission denied rehearing of the Certificate Order. *Transcontinental Gas Pipe Line Co.*, 161 FERC ¶ 61,250 (2017) ("Certificate Rehearing Order"). By that time, Transco had already started construction on the Homeowners' property.

After the Commission denied rehearing, the Homeowners and Environmental Associations timely filed their second petitions for review with this court. *See* 15 U.S.C. § 717r(b); *see also* Petition for Review, No. 17-1263 (D.C. Cir. Dec. 15, 2017) (Environmental Associations); Petition for Review, No. 18-1030 (D.C. Cir. Jan. 29, 2018) (Homeowners). The Homeowners and Environmental Associations argued that the Commission conducted an inadequate environmental review under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, failed to support its determination that the Project served a market need as required by the Natural Gas Act, and denied them due process by allowing construction to begin before any court could review the Certificate Order.

Three months after denying rehearing of the Certificate Order, the Commission denied rehearing of the Construction Order. *Transcontinental Gas Pipeline Co.*, 162 FERC ¶ 61,192 (2018).

By the time a panel of this court held oral argument in December 2018 on the merits of the Homeowners' and Environmental Associations' petitions for review, the pipeline had been built and operational for two months. Notification of

Placement Into Service, *Transcontinental Gas Pipe Line Co.*, Nos. CP-15-138-000 & CP17-212-000 (FERC Oct. 9, 2018).

The panel ultimately treated the motions to dismiss the first round of petitions as moot, reasoning that the second round gave this court jurisdiction to review the Certificate Rehearing Order, "which encompasses all of [the Homeowners' and Environmental Associations'] claims for our review and is the final agency decision greenlighting the Project[.]" *Allegheny Defense Project v. FERC*, 932 F.3d 940, 945 & n.1 (D.C. Cir. 2019) (per curiam). On the merits, the panel rejected the Homeowners' and Environmental Associations' arguments and denied the petitions for review. *Id.* at 945–948.

The court subsequently granted the Homeowners' petition for rehearing en banc and vacated the panel's judgment.

**II**

We took this case en banc to address a focused question of statutory construction: Does the Federal Energy Regulatory Commission "act[] upon" an application for rehearing within the meaning of Section 717r of the Natural Gas Act by issuing a tolling order that does nothing more than prevent the application from being deemed denied by agency inaction and preclude the applicant from seeking judicial review until the Commission acts?

The question is an important one. The Commission's use of tolling orders that do nothing more than buy itself more time to act on a rehearing application and stall judicial review has become virtually automatic. As the Commission acknowledged at oral argument, absent some special need for "quick action," it enters tolling orders "almost as a matter of routine," as it did in this case. Oral Arg. Tr. 89:6–9; *id.* ("I believe that's the process that was followed here.").

By way of illustration, over the last twelve years, the Commission issued a tolling order in all thirty-nine cases in which a landowner sought rehearing in a proceeding involving natural gas pipeline construction. Commission's Rule 28(j) Letter at 111 (May 4, 2020) (reproducing documents the Commission submitted to the Subcommittee on Civil Rights and Civil Liberties of the House Committee on Oversight and Reform). Another study showed (and the Commission has not denied) that, between 2009 and 2017, the Commission issued tolling orders in response to 99% of all the requests for rehearing of pipeline certification decisions that it received, whether from homeowners or other parties. Petition for an Extraordinary Writ at Exhibit G, *In re Appalachian Voices*, No. 18-1006 (Jan. 8, 2018) (cataloguing tolling orders issued in 74 out of 75 pipeline certifications between 2009 and 2017). And according to the Commission's website, the Commission has issued tolling orders in response to every rehearing petition filed by any party (landowner or otherwise) to a pipeline certification case since 2017.

The use of these tolling orders has real-world consequences. In practice, they can prevent aggrieved parties from obtaining timely judicial review of the Commission's decision. As mentioned, Section 717r provides that a rehearing application may be deemed denied if the Commission does not act upon it within thirty days. 15 U.S.C. § 717r(a). But through the use of tolling orders, the Commission has eliminated entirely the jurisdictional consequences of its inaction, preventing rehearing applications from being deemed denied even after they have been pending for prolonged periods of time. In this case, the Commission used tolling orders to give itself roughly ten times as long as the statute allots for it to act.

On top of that, the Commission and private certificate holders use its tolling orders to split the atom of finality. They

are not final enough for aggrieved parties to seek relief in court, but they are final enough for private pipeline companies to go to court and take private property by eminent domain. And they are final enough for the Commission to greenlight construction and even operation of the pipelines. Tolling orders, in other words, render Commission decisions akin to Schrödinger's cat: both final and not final at the same time.

That asymmetrical finality timetable has become commonplace in Commission cases. For the 114 natural gas pipeline cases pending before the Commission from October 1, 2008 through February 19, 2020 in which any party—landowner or otherwise—requested a rehearing, the Commission authorized construction to begin before resolving the rehearing request on the merits in 64% of the cases. Commission's Rule 28(j) Letter at 111. *See generally Subcommittee Releases Preliminary Findings Showing FERC Pipeline Approval Process Skewed Against Landowners*, HOUSE COMMITTEE ON OVERSIGHT & REFORM (April 28, 2020), https://oversight.house.gov/news/press-releases/subcommittee-releases-preliminary-findings-showing-ferc-pipeline-approval (summarizing a preliminary video report on an investigation into the Commission's certificate and rehearing process by the Subcommittee on Civil Rights and Civil Liberties of the House Committee on Oversight and Reform).[2]

---

[2] After oral argument in this case, the Commission adopted a regulation addressing this slice of the problem in cases involving orders "authorizing the construction of new natural gas transportation, export, or import facilities[.]" Limiting Authorizations to Proceed with Construction Activities Pending Rehearing, 171 FERC ¶ 61,201, at 12–13 (to be codified at 18 C.F.R. § 157.23). In those cases, the Commission will not authorize any "construction activities" until it "has acted upon the merits" of any

18

The problem is well known to the Commission itself. Commissioner Glick has called the process enabled by the Commission's tolling orders "fundamentally unfair," at least when it "allows a pipeline developer to build its entire project while simultaneously preventing opponents of that pipeline from having their day in court[,] ensur[ing] that irreparable harm will occur before any party has access to judicial relief." *Spire STL Pipeline LLC*, 169 FERC ¶ 61,134, 2019 WL 6242969, at *29–30 (2019) (Glick, Comm'r, dissenting); *see also id.* at *30 ("Under those circumstances, dismissing as moot [a party's] year-old request for a stay pending rehearing because the Commission finally issued an order on rehearing is a level of bureaucratic indifference that I find hard to stomach.") (footnote omitted). *See generally Narragansett Indian Tribal Historic Preservation Office v. FERC*, 949 F.3d 8, 10–12 (D.C. Cir. 2020) (Commission tolled rehearing applications and a stay motion until pipeline construction irremediably destroyed religiously significant features, and then denied the stay motion as moot); *Delaware Riverkeeper Network v. FERC*, 753 F.3d 1304, 1307–1309, 1312 (D.C. Cir. 2014) (Commission authorized tree clearing and compressor station construction, *see* 142 FERC ¶ 61,025, at ¶ 26 (2013), while tolling rehearing applications and a stay motion for six and a half months, with the result that the pipeline was completed by the time this court held that the Commission

timely rehearing application or the deadline to seek rehearing has passed without an application. *Id.* This new rule does not, however, prevent eminent domain proceedings from going forward based on the underlying certificate order. *See id.*, 2020 WL 3072333, at *7 (Glick, Comm'r, concurring in part and dissenting in part) ("[T]his final rule deals only with construction without making any effort to address the exercise of eminent domain during that period when the courthouse doors are closed to landowners seeking to challenge the certificate.").

order violated NEPA); *Columbia Gas Transmission, LLC*, 170 FERC ¶ 61,246, at ¶¶ 1–2 (2020) (Commission tolled environmental groups' rehearing application for more than two years, while allowing a 170-mile pipeline to be completely built and put into service more than a year before the Commission ruled on the merits, *see* Environmental Compliance Monitoring Report at 1, No. CP16-357-000 (FERC Dec. 23, 2019)).

Against that backdrop, we turn to first principles and ask whether the Natural Gas Act allows the Commission to issue tolling orders for the sole purposes of preventing rehearing from being deemed denied by its inaction and the statutory right to judicial review attaching. As a matter of plain statutory text and structure, the Commission lacks that authority.

**A**

Because it is a pure question of law, we decide the meaning of Section 717r of the Natural Gas Act *de novo*. *See Association of American Railroads v. United States Dep't of Transp.*, 896 F.3d 539, 544 (D.C. Cir. 2018); *Validus Reinsurance, Ltd. v. United States*, 786 F.3d 1039, 1042 (D.C. Cir. 2015).

To be sure, in agency cases, we generally grant deference to an agency's reasonable interpretation of ambiguity in a statute it administers, applying the framework of *Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984); *see also Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2142, 2144 (2016). And that is what the Commission asks for here.

The problem for the Commission is that *Chevron* deference is available only when an agency interprets a statutory provision that Congress has charged it with

administering through application of its expertise. *See National Parks Conservation Ass'n v. Semonite*, 916 F.3d 1075, 1088 (D.C. Cir. 2019). But statutory provisions addressing the jurisdiction of federal courts do not fit that mold. Federal agencies do not administer and have no relevant expertise in enforcing the boundaries of the courts' jurisdiction. *See Murphy Exploration & Production Co. v. United States Dep't of the Interior*, 252 F.3d 473, 478–479 (D.C. Cir. 2001); *see also Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649–650 (1990) (holding that, in the context of identifying a private right of action, the congressional delegation to the agency of authority to administer other parts of the statute did not "empower [the agency] to regulate the scope of the judicial power vested by the statute").

Section 717r(a) speaks directly to federal court jurisdiction to review Commission orders. It conditions jurisdiction on a petitioner having first "made application to the Commission for a rehearing." 15 U.S.C. § 717r(a). It also provides that if the Commission fails to act on such an application after thirty days, the application "may be deemed to have been denied," *id.*, so that the underlying Commission order can be judicially reviewed, *id.* § 717r(b). So *Chevron* deference does not apply in this case.

The Commission acknowledges that Section 717r(b) is a jurisdiction-conferring provision administered by the courts. But it argues that the provision at issue here is Section 717r(a), which it views as addressing only the Commission's own "jurisdiction to entertain rehearing requests." Commission's Br. 21.

That slices the salami too thinly. In *Murphy Exploration*, we held that *Chevron* deference does not apply to a similarly structured statute, 30 U.S.C. § 1724(h), in which the provisions

addressing administrative proceedings were tied directly to a neighboring provision conferring federal court jurisdiction. *See* 252 F.3d at 478–480. Subsection (1) of Section 1724(h) instructed the agency to "issue a final decision in any administrative proceeding" within a specified time period. *Id.* at 480 (quoting 30 U.S.C. § 1724(h)(1)). Subsection (2) provided that, if the agency failed to act within the specified time period, it "shall be deemed to have issued a final decision in [its] favor and the appellant shall have a right to judicial review of such deemed final action[.]" *Id.* (quoting 30 U.S.C. § 1724(h)(2)). And the definition of "administrative proceeding" appeared in another section altogether. *Id.* (citing 30 U.S.C. § 1702(18)). Given the statutory intertwining of the administrative proceeding and the attachment of federal court jurisdiction, we held that *Chevron* deference did not apply to "the meaning of the words 'any administrative proceeding.'" *Id.* at 479–480. That term, in the context of a jurisdiction-conferring statute, "regulate[d] the scope of the judicial power vested by the statute[,]" and so courts, not the agency, were responsible for construing it. *See id.* at 478–479.

So too here. Section 717r(a) addresses both the filing of an application for rehearing as a precondition to judicial review, and the effect of agency inaction within a specified time limit on opening the courthouse doors. As a result, the responsibility for interpreting Section 717r(a) falls to the courts, not to the Commission. We so held in *Alabama Municipal Distributors Group v. FERC*, 300 F.3d 877 (D.C. Cir. 2002) (per curiam), where we applied *Murphy Exploration* to the very statutory provisions at issue here—Sections 717r(a) and (b), *id.* at 879 (citing *Murphy Exploration*, 252 F.3d at 478–480). We reaffirm that aspect of *Alabama Municipal Distributors* and the inapplicability of *Chevron* deference here.

**B**

The question before this court is whether the Commission had the authority to issue the Tolling Order that served solely to override the deemed-denied provision and thereby prevent the petitioners from seeking judicial review until whenever the Commission acted. Because Section 717r(a) unambiguously forecloses such a Tolling Order, our analysis "begins with the statutory text, and ends there as well." *National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617, 631 (2018) (internal quotation marks omitted).

As noted earlier, there is no question that Section 717r(a) requires the filing of an application for rehearing as a precondition to judicial review of Commission action. *See* 15 U.S.C. § 717r(a).

The statute then specifies what happens once such an application is filed:

> *Upon such application* [for rehearing] the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing. Unless the Commission *acts upon the application* for rehearing within thirty days after it is filed, such application may be deemed to have been denied.

15 U.S.C. § 717r(a) (emphases added). So, to break it down, the Commission can (i) "grant * * * rehearing," (ii) "deny rehearing," (iii) "abrogate * * * its order without further hearing," or (iv) "modify its order without further hearing[.]" *Id.*

The statute is equally precise about what is to happen if the Commission fails to "act[] upon the application" within thirty

days: The application "may be deemed to have been denied." 15 U.S.C. § 717r(a). By referring again in the deemed-denied provision to what the Commission has—or has not—done "upon the application[,]" Congress signaled that the kinds of actions that prevent a deemed denial are the four dispositions just listed. So once thirty days pass without an enumerated action by the Commission, the applicant may deem its rehearing application denied and seek judicial review of the now-final agency action. *Id.* § 717r(b); *see Texas–Ohio Gas Co. v. Federal Power Comm'n*, 207 F.2d 615, 616–617 (D.C. Cir. 1953) ("The primary intent evidently was to permit an appeal to the courts by a disappointed litigant as soon as thirty days have passed, without waiting longer for the Commission to act on his application for rehearing.").

The Commission insists (Br. 22–24) that its Tolling Order did "act[] upon the application," 15 U.S.C. § 717r(a), because it included language stating that "rehearing * * * is hereby granted[,]" J.A. 305. But Section 717r(a) is not such an empty vessel. The question is not one of labels, but of signification: Did the Tolling Order amount to a "grant" of rehearing within the meaning of the statute, or instead amount only to inaction on the application, which would trigger the possibility of judicial review as a deemed denial. The Tolling Order fell into the latter camp.

*First*, a "grant" of rehearing, as opposed to inaction on an application for rehearing, necessarily requires at least some substantive engagement with the application. A grant of rehearing cannot consist solely of a grant of additional time to decide whether to grant rehearing. Yet the Commission admits that its purported grant of rehearing in this case, as is true "in virtually every case[,]" was made without any substantive engagement with the rehearing application. Oral Arg. Tr. 89:10–20. Rather, the sole purpose of the Tolling Order

was to take "some" kind of "action on [the application] within 30 days" just to give the Commission more time "to issue a substantive order" on the application at some unspecified later date. *Id*. at 89:23–90:12. That is why the Tolling Order is emphatic that it is doing one thing, and one thing only: It is preventing "timely-filed rehearing requests" from being "deemed denied by operation of law," J.A. 305, and in that way foreclosing judicial review of the underlying order for as much time as the Commission chooses to take.

Lest there be any doubt, the Tolling Order immediately qualifies its "grant[]" as being made only "for the limited purpose" of "afford[ing] additional time for consideration of the matters raised[.]" J.A. 305. That is not a grant of rehearing of the challenged order; it is kicking the can down the road. Which the Tolling Order admits in the next sentence when it assures that "[r]ehearing requests of the above-cited order filed in this proceeding will be addressed in a future order." J.A. 305. The Commission cannot have it both ways, claiming to have granted rehearing in one breath, while promising in the next breath that it will decide in some future order whether to grant rehearing or not. *See* Certificate Rehearing Order ¶¶ 2–3, 5 (denying the applications for rehearing that were purportedly granted in the Tolling Order); Oral Arg. Tr. 84:10–13 (Commission conceding that an order that "sets a schedule" for further proceedings addressed to the merits of the application would be different from a tolling order).

Nor does the Commission even attempt to argue that its announced intention to decide something about the rehearing application at some unspecified time in the future falls within the ordinary meaning of "rehearing," or any definition of "rehearing" known to the law. We could not find any textual justification for it either. When Section 717r(a) was enacted in 1938, a "rehearing" was just what it sounds like: a "second

hearing." *Rehearing*, BLACK'S LAW DICTIONARY 1519 (3d ed. 1933) (defining "rehearing" as, "[i]n equity practice[,] [a] second hearing of a cause, for which a party who is dissatisfied with the decree entered on the former hearing may apply by petition"); *accord Rehearing*, WEBSTER'S NEW INTERNATIONAL DICTIONARY 2100 (2d ed. 1934) (defining "rehearing" as "[a] hearing again or anew; specif., *Law*, a second or repeated hearing, as of a trial or of an argument on appeal").[3]

*Second*, the Tolling Order did not do—and could not have done—anything more than stall for time. As routinely happens, the Tolling Order was entered not by the Commission itself, but by its Secretary (or Deputy Secretary). J.A. 305, 326. The Secretary, though, has not been delegated any authority to "act on" the rehearing application. Delegation Order, 82 Fed. Reg. at 10,568 (Secretary lacks "authority to act on requests for rehearing"); *cf.* 18 C.F.R. § 375.302(g)–(h) (authorizing the Secretary to reject filings if they are untimely or deficient in "form"). The only thing the Secretary can do with rehearing applications is "[t]oll the time for action on requests for rehearing." 18 C.F.R. § 375.302(v); *see also* Delegation of Authority to the Secretary, 60 Fed. Reg. 62,326 (Dec. 6, 1995) (explaining that 18 C.F.R. § 375.302(v) allows the Secretary to "issue[] an order granting rehearing for the purpose of further

---

[3] *Cf. Hearing*, BLACK'S LAW DICTIONARY, *supra*, at 882 (defining "hearing" as, "in equity practice[,]" "the hearing of the arguments of the counsel for the parties upon the pleadings, or pleadings and proofs; corresponding to the trial of an action at law") (capitalization modified); *Hearing*, WEBSTER'S NEW INTERNATIONAL DICTIONARY, *supra*, at 1150 (defs. 8a, 8b) (defining "hearing" as, "[i]n equity practice, a trial" and as "[a] listening to arguments or proofs and arguments in interlocutory proceedings").

consideration" so as to avoid a deemed denial). *Contrast* 15 U.S.C. § 717r(a) ("Commission" must "act[] upon the application for rehearing within thirty days" to avoid it being deemed denied).

Yet, to avoid having the rehearing application deemed denied, Section 717r(a) expressly requires what the Secretary is specifically forbidden to do: "act[] upon" the application. *Compare* 15 U.S.C. § 717r(a), *with* Delegation Order, 82 Fed. Reg. at 10,568.

*Third*, the Commission's practice confirms what the Tolling Order said: Its sole function was to grant the Commission an unbounded amount of "additional time," J.A. 305, 326, within which rehearing could never be deemed denied and during which the applicants were prevented from obtaining judicial review. Indeed, the Commission asserted at oral argument that the statute puts no limit at all on how long it may toll. Oral Arg. Tr. 98:13–99:6.

In this case, the Commission took an extra nine months to act. Over the last twelve years, the Commission has taken 212 days on average—about seven months—from tolling order to actual rehearing decision on landowners' applications in pipeline cases. Commission's Rule 28(j) Letter at 111. On average, then, the Commission has been octupling the statutory timeframe for decision in such cases. Other matters before the Commission have met a similar fate, with open-ended tolling orders leaving applicants awaiting action for a year or more. *See, e.g.*, *Calpine Corp.*, 171 FERC ¶ 61,034, at ¶¶ 60–66 (2020) (Commission took twenty-two months to deny States' rehearing applications challenging an order in a Federal Power Act tariff case that, in the States' view, infringed on their jurisdiction and sovereign rights); Environmental Amici's Br. 21–22 & Exhibit D (collecting proceedings across all

categories of the Commission's business in which the Commission issued a decision in 2018 or 2019, and finding that it tolled every timely filed rehearing application, with an average tolling period of more than six months).

At bottom, what the Tolling Order did was delete the thirty-day time limit and the deemed-denied provision from the statute. Section 717r(a) says in straightforward terms that the Commission's failure to act on a rehearing application within thirty days means that rehearing can be deemed denied and the applicant can obtain judicial review. 15 U.S.C. § 717r(a); *see Texas–Ohio Gas Co.*, 207 F.2d at 616–617. The Commission has rewritten the statute to say that its failure to act within thirty days means nothing; it can take as much time as it wants; and until it chooses to act, the applicant is trapped, unable to obtain judicial review.

But the Commission has no authority to erase and replace the statutorily prescribed jurisdictional consequences of its inaction. Agencies, no less than courts, cannot render statutory language a nullity and leave entire operative clauses with "no job to do." *Doe v. Chao*, 540 U.S. 614, 623 (2004); *see also Clark v. Rameker*, 573 U.S. 122, 131 (2014) ("Petitioners' reading would write out of the statute the first element. It therefore flouts the rule that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous.") (internal quotation marks omitted).

*Fourth*, and tellingly, when Congress wants to allow agencies to modify the consequences of their inaction, it says so explicitly—and carefully cabins the agency's leeway in the process. *See, e.g.*, 15 U.S.C. § 78s(b)(2)(A), (C) (Securities and Exchange Commission has 45 days to "approve or disapprove" a regulated party's proposed rule changes or to

"institute proceedings"; if the Commission fails to act in 45 days, the changes are deemed approved; the Commission may "extend [that] period * * * by not more than an additional 45 days" only in limited, specified circumstances). Similar provisions include 10 U.S.C. § 628(g)(3), 12 U.S.C. § 1843(j)(1)(C), 15 U.S.C. § 8704(d)(2)(C), 21 U.S.C. § 343(r)(4)(A)(i), 21 U.S.C. § 360ccc(d)(2), 30 U.S.C. § 1724(h)(1), 46 U.S.C. § 53911(d), 47 U.S.C. § 160(c), and 47 U.S.C. § 537.

Congress, in fact, kept the Commission on a tight leash when it amended the Federal Power Act, a close relative of the Natural Gas Act, to allow the Commission to extend the amount of time it had to act on public utilities' applications for the Commission's approval of certain transactions. *See, e.g.*, *City of Clarksville v. FERC*, 888 F.3d 477, 484 (D.C. Cir. 2018) ("Because the [Natural Gas Act] is modeled substantively after the [Federal Power Act], they are interpreted similarly."). In 2005, Congress amended the Federal Power Act to provide that those applications are "deemed granted" unless the Commission acts within 180 days. 16 U.S.C. § 824b(a)(5). But Congress expressly authorized the Commission to toll that period for "not more than 180 days" if, and only if, it first finds, "based on good cause, that further consideration is required to determine whether" to approve the application. *Id.*

The absence of any comparable authority to toll in Section 717r(a) is stark. And that textual omission pulls the rug out from under the Commission's claim of the unwritten and unilateral power to indefinitely evade a deemed denial and the accompanying prospect of judicial review.

Undeterred by the lack of authorizing language in Section 717r(a), the Commission points to another provision of the Natural Gas Act—15 U.S.C. § 717o—as the source of

authority for tolling orders. Commission's Br. 27–28. Section 717o empowers the Commission "to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of" the Natural Gas Act. 15 U.S.C. § 717o. But that is an authority to "carry out the provisions of" the Natural Gas Act, *id.*, not to render nugatory the deemed-denied provision and its jurisdictional consequences. "A general grant of authority cannot displace the clear, specific text of" a statute. *Murray Energy Corp. v. EPA*, 936 F.3d 597, 627 (D.C. Cir. 2019).

*Fifth*, the Commission argues (Br. 28–33) that the Tolling Order was necessary to afford it the time it needed to act in this complicated area of law. While the Commission's responsibilities are substantial, we are bound to enforce the statutory text and its jurisdictional grant as Congress wrote it.

It also bears emphasizing, in that regard, that the only question we decide is that the Commission cannot use tolling orders to change the statutorily prescribed jurisdictional consequences of its inaction. That is not the same thing as saying the Commission must actually decide the rehearing application within that thirty-day window. Because the Tolling Order served only to override the deemed-denied provision and so to postpone judicial review, we need not decide whether or how Section 717r(a), the ripeness doctrine, or exhaustion principles might apply if the Commission were to grant rehearing for the express purpose of revisiting and substantively reconsidering a prior decision, and needed

additional time to allow for supplemental briefing or further hearing processes.[4]

Moreover, even when the agency takes no action during the thirty-day period, Section 717r(a) specifically gives the Commission more time to decide by providing that, "[u]ntil the record in a proceeding shall have been filed in a court of appeals," the Commission "may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of [the Natural Gas Act]." 15 U.S.C. § 717r(a).

That means that, even after a petition for judicial review is filed, the Commission retains the authority to "modify or set aside, in whole or in part" the underlying order or findings. The Commission retains this authority until the administrative record is filed in court, which is typically forty days after the petition is served on the Commission. FED. R. APP. P. 17(a). That same Rule allows the court to further extend that time, *id*., as occurred in this very case, Order, No. 17-1098 (D.C. Cir. Nov. 21, 2017) (per curiam) (denying the Commission's motion for an open-ended extension until it resolved the rehearing applications, but giving it until December 14, 2017—nearly nine months after the first petition for review was filed—to file the administrative record).

So in practice, even if an applicant files a petition for review immediately after a deemed denial, the Commission will typically still have at least seventy days total, with the

---

[4] Nor need we decide what the implications of such a substantive grant of merits rehearing by the Commission itself might be for reliance in eminent domain proceedings on an order under such active reconsideration.

possibility of more time, to act on a rehearing application. The difference between Section 717r(a)'s provision and the Commission's tolling-order approach is critical. The statute's approach, unlike the Commission's, ensures that the Commission's additional time for action comes with judicial superintendence and the opportunity for the applicant to seek temporary injunctive relief if needed under the ordinary standards for a stay.

Preserving that balance as Congress struck it is vital because "no legislation pursues its purposes at all costs." *Rodriguez v. United States*, 480 U.S. 522, 525–526 (1987) (per curiam). Much as it has in the statutes that expressly grant a tightly cabined tolling authority, *see supra* at 27–28, Congress chose in Section 717r(a) to balance the Commission's need for decisional time with the applicants' need for timely judicial review. The Commission's unilateral use of tolling orders both to grant itself unlimited time to act without rehearing being deemed denied and to delay judicial review unravels Congress's arrangement. If the Commission still cannot decide whether to grant rehearing within the timeframe that the plain statutory text affords, it "can seek relief from Congress, which * * * is both qualified and constitutionally entitled to weigh the costs and benefits of different approaches and make the necessary policy judgment." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1816 (2019).

*Finally*, the Commission (Br. 23, 42) and the dissenting opinion invoke *stare decisis*—"the idea that today's [c]ourt should stand by yesterday's decisions[,]" *Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015). Both contend that, because past decisions allowed the Commission's use of tolling orders, *stare decisis* prevents us from invalidating the Tolling Order in this case.

We first upheld a tolling order in *California Co. v. Federal Power Commission*, 411 F.2d 720 (D.C. Cir. 1969) (per curiam). There, a two-judge panel of the court, without the benefit of oral argument, deferred to the Commission's reading of Section 717r(a)'s deemed-denied provision as allowing the Commission to forestall a deemed denial simply by claiming more time to decide whether to grant rehearing. *Id.* at 720, 722. In so doing, the panel candidly acknowledged that the Commission's reading of the statute was "far from self-evident." *Id.* at 722. The panel nonetheless elevated policy concerns about "administrative and judicial problems" over the plain statutory text. *Id.* Of course, in so doing, that panel could not have foreseen the Commission's routinization of tolling orders, the unbounded length of tolling periods, or, since *California Co.* involved rate setting, the severe consequences of the tolling practice for property owners. *See supra* 16–19; *cf. Knick v. Township of Scott*, 139 S. Ct. 2162, 2178–2179 (2019). Later panels followed *California Co.* without further analysis. *See Moreau v. FERC*, 982 F.2d 556, 564, 567 (D.C. Cir. 1993); *Delaware Riverkeeper Network v. FERC*, 895 F.3d 102, 113 (D.C. Cir. 2018).

*Stare decisis* principles do not require us to continue down the wrong path. Because circuit courts "play a different role in the federal system than the Supreme Court," *stare decisis* applies differently to circuit precedent than it does at the Supreme Court. *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 876 (D.C. Cir. 1992) (en banc). In particular, as the dissenting opinion acknowledges, Dissenting Op. at 3, it is appropriate for the en banc court to set aside circuit precedent when, "on reexamination of an earlier decision, it decides that the panel's holding on an important question of law was fundamentally flawed[,]" *Critical Mass Energy*, 975 F.2d at 876; *accord United States v. Burwell*, 690 F.3d 500, 504 (D.C. Cir. 2012) (en banc) (same).

We also may depart from circuit precedent when "intervening development[s]" in the law—such as Supreme Court decisions—"ha[ve] removed or weakened the conceptual underpinnings from the prior decision[.]" *Burwell*, 690 F.3d at 504 (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 173 (1989)).

*California Co.*'s acceptance of tolling orders is both "fundamentally flawed," *Critical Mass Energy*, 975 F.2d at 876, and irreconcilable with intervening Supreme Court decisions, *Burwell*, 690 F.3d at 504, in two respects.

First, intervening Supreme Court precedent emphatically establishes that courts must take statutory language at its word. *See, e.g.*, *Intel Corp. Investment Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020) ("We must enforce plain and unambiguous statutory language * * * according to its terms.") (internal quotation marks omitted); *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1040 (2019) ("[W]e must enforce the statute that Congress enacted."). Doing so requires courts to start with the statutory text, and to end there as well when, as here, the statute speaks clearly. As the Supreme Court "has explained many times over many years," when "the meaning of the statute's terms is plain, our job is at an end." *Bostock v. Clayton County*, Nos. 17-1618 et al., 2020 WL 3146686, at *14 (U.S. June 15, 2020); *see also, e.g.*, *National Ass'n of Mfrs.*, 138 S. Ct. at 631.

Second, as we and the Supreme Court have since recognized, agencies get no deference in interpreting jurisdictional statutes. *See Adams Fruit*, 494 U.S. at 649–650; *Murphy Exploration*, 252 F.3d at 478–479; *supra* at 19–21.

Because the approach to statutory construction reflected in our tolling order precedent was fundamentally flawed and grounded in a mode of statutory construction that has been

foreclosed by the Supreme Court, *stare decisis* principles do not stand in the way of the en banc court holding that Section 717r(a)'s deemed-denied provision means what it says.

\* \* \* \* \*

In sum, we hold that, after thirty days elapsed from the filing of a rehearing application without Commission action, the Tolling Order could neither prevent a deemed denial nor alter the jurisdictional consequences of agency inaction. To the extent our prior decisions upheld the use of tolling orders in that manner, they are overruled in relevant part.

## III

Because the Commission's Tolling Order could not prevent the Homeowners and Environmental Associations from seeking judicial review, the initial petitions for review that they filed challenging the Certificate Order in Nos. 17-1098 and 17-1128 are properly before this court for review, and the motions to dismiss those petitions for lack of jurisdiction are denied.

In those petitions, as well as two later-filed ones, the Homeowners and Environmental Associations challenged the Commission's finding of a market need for the pipeline. To obtain a certificate of public convenience and necessity, Transco had to demonstrate, among other things, market need for its proposed transportation of natural gas. *See Sierra Club v. FERC*, 867 F.3d 1357, 1379 (D.C. Cir. 2017); *Myersville*, 783 F.3d at 1309 (citing Certification of New Interstate Natural Gas Pipeline Facilities, 88 FERC ¶ 61,227 (1999), *clarified*, 90 FERC ¶ 61,128 (2000), *further clarified*, 92 FERC ¶ 61,094 (2000)).

The Commission found that the market-need requirement was satisfied here, relying in part on "precedent agreements." Precedent agreements are long-term contracts in which gas shippers agree to buy the proposed pipeline's transportation services. *Myersville*, 783 F.3d at 1310.

The Homeowners and Environmental Associations argue that reliance on the precedent agreements was arbitrary and capricious because those contracts evidenced demand for export capacity, not domestic use of the natural gas being transported.

We have reconsidered and agree with the panel's decision that the Commission reasonably found market need in this case. In doing so, we need not address the Homeowners' and Environmental Associations' objections to reliance on precedent agreements because, in this case, the Commission also grounded its finding of market need on "comments by two shippers and one end-user, as well as a study submitted by one of the Environmental Associations, all of which reinforced the [domestic] demand for the natural gas shipments." 932 F.3d at 947.

**IV**

In conclusion, the Tolling Order—which did nothing more than purport to override the statutorily prescribed jurisdictional consequences of the Commission's inaction on the pending rehearing applications—was not an "act[ion] upon" the Homeowners' and Environmental Associations' rehearing applications within the meaning of Section 717r(a). As a result of the Commission's inaction, the applications were deemed denied, and this court had jurisdiction over the initial petitions for review. On the merits of those petitions as well as the later petitions, the Homeowners' and Environmental Associations' challenge to the Certificate Order falls short because the

Commission did not rely on precedent agreements alone to find that the pipeline would be a matter of public convenience and necessity. We therefore deny all four petitions for review, as well as the Commission's and Transco's motions to dismiss the petitions for review in Nos. 17-1098 and 17-1128.

*So ordered.*

GRIFFITH, *Circuit Judge*, with whom KATSAS and RAO, *Circuit Judges*, join, concurring:    I join the opinion for the court. The Commission "acts upon" an application for rehearing by taking one of the four enumerated actions in 15 U.S.C. § 717r(a). And the Commission has all but conceded that the order in this case was *not* a "grant [of] rehearing" under the statute but merely "some action" designed to forestall a deemed denial. *See* Oral Arg. Tr. 90:9-12; Maj. Op. at 24. But "tolling orders" are just one part of the legal web that can ensnare landowners in pipeline cases. Even after today's decision, that web consists of three strands: delayed judicial review, uninterrupted construction, and district courts' swift transfer of property. I write separately to clarify that the first factor, delayed review, is not the primary driver of unfairness, and to note possibilities for curtailing the remaining factors.

\* \* \*

One cannot review the procedural history of this case, and others like it, without concluding that something is amiss. Landowners watch as their property is handed over to pipeline companies and irreparably transformed, all without judicial consideration of the crucial question: Should the pipeline exist? As I see it, this injustice is the unintentional result of the way three factors sometimes combine. *First*, the Natural Gas Act allows the Commission to postpone judicial review by "grant[ing] . . . rehearing" short of deciding the merits. 15 U.S.C. § 717r(a); *see Moreau v. FERC*, 982 F.2d 556, 564 (D.C. Cir. 1993). *Second*, the Commission, as a matter of policy, has often given the green light to irreversible construction before any court has reviewed the certificate order. *Third*, exercising their discretion, district courts considering eminent-domain suits sometimes transfer property to pipeline companies regardless of the Commission's decision to grant rehearing.

Today's decision doesn't uproot these factors. Nor could it: As the court's opinion explains, the case before us presents "a focused question of statutory construction." Maj. Op. at 15. But the court is rightly concerned about procedural fairness— or lack thereof—in the Commission's approach to pipeline cases. It's worth considering which aspects of that approach come with benefits and which impose the highest costs. Postponing judicial review until the Commission completes its rehearing process is both compelled by existing law and, in my view, quite sensible. Landowners suffer injustice only when that delay is unreasonable, or when it is accompanied by irreversible construction or the condemnation of their property. The good news is that our court, district courts, and the Commission itself have the necessary tools to guarantee fair proceedings.

Start with delayed judicial review. All agree that the Natural Gas Act permits us to review a Commission certificate order in one of two scenarios. First, we take jurisdiction when the Commission fails to "act[] upon the application for rehearing within thirty days after it is filed." 15 U.S.C. § 717r(a). And the court holds today that a tolling order cannot prevent a deemed denial because it isn't an "act[] upon" the application. Maj. Op. at 34.

Second, we can hear challenges to a certificate order once the Commission completes its substantive review. Phrased in the negative, we lack jurisdiction "until FERC rules on the *merits* of a granted petition for rehearing." *Moreau*, 982 F.2d at 564 (emphasis added). That caveat is important because the Commission can grant rehearing *without* making a merits decision. Nothing in the statute suggests that Congress really meant "decide the merits" when it said "grant . . . rehearing." 15 U.S.C. § 717r(a). To the contrary, the Act tells us that the Commission may, within the thirty-day window, "abrogate or

modify [the underlying] order *without* further hearing." *Id.* (emphasis added). This negative language confirms that a rehearing grant, by contrast, is nothing more than a decision to engage in "further hearing." *Cf.* Maj. Op. at 24-25.

By its own logic, the court's opinion has nothing to say about this route to judicial review. Nor does it offer guidance on what counts as a Commission "grant" of rehearing. In fact, it expressly declines to weigh in on orders that "grant rehearing for the express purpose of revisiting and substantively reconsidering a prior decision" and provide "further hearing processes." *Id.* at 29-30. That limitation on today's decision leaves the Commission free to grant rehearing by agreeing to consider the applicant's arguments for modifying or revoking its previous action—*i.e.*, by deciding to decide. Going forward, the Commission should receive the benefit of the doubt when it issues an order that announces a clear intention to reconsider the merits of the underlying order and a concrete step operationalizing that intent. For example, the Commission would easily satisfy the Act by setting a briefing schedule or by ordering the pipeline company to respond to the claims made in the application.

The upshot: When the Commission actually grants rehearing—as opposed to issuing a tolling order—it secures additional time to consider whether to alter or revoke the underlying order. The Commission's leeway to postpone judicial review isn't an aberration born of agency trickery; it's a consequence of the statutory text and sound circuit precedent. A different approach would subvert Congress's expectation that generalist judges will, in the ordinary course, consider complex pipeline cases only after expert review. *See Nw. Pipeline Corp. v. FERC*, 863 F.2d 73, 77-78 (D.C. Cir. 1988); *Public Serv. Comm'n v. Federal Power Comm'n*, 543 F.2d 757, 774 n.116 (D.C. Cir. 1974). "[M]andatory petition-for-

rehearing requirement[s]," although "virtually unheard-of" in other contexts, "happen to exist in all three of the major statutes administered by FERC." *ASARCO, Inc. v. FERC*, 777 F.2d 764, 774 (D.C. Cir. 1985) (Scalia, J.). These provisions, including section 717r, are "the product of an awareness that FERC's complex and multi-party proceedings would soon overwhelm the system if agreed-upon settlements and acquiesced-in agency dispositions were not the rule rather than the exception." *Id.*

Artificially restricting the Commission's time for reconsideration would undermine its ability to evaluate the arguments and evidence presented by aggrieved parties and burden federal courts of appeal. But we shouldn't let down our guard—an agency given an inch might be tempted to take a mile. If the Commission promises rehearing proceedings but in fact provides nothing more than undue delay, we should entertain the possibility of mandamus relief. *See Del. Riverkeeper Network v. FERC*, 895 F.3d 102, 113 (D.C. Cir. 2018).

That brings us to the next major contributor to unfairness in pipeline cases: approval of irreversible construction while rehearing is pending. Deferred judicial review, on its own, doesn't necessarily harm landowners. That harm stems from the Commission's actions in the interim. And the Commission has long issued construction orders—essentially qualified permission slips to begin bulldozing—while its "rehearing" is ongoing and before an Article III court has weighed in. *See* Maj. Op. at 17. In recent weeks, however, the Commission has proven capable of changing course in the face of public criticism. After oral argument, the Commission formally amended its rehearing regulations to "preclude[] the issuance" of construction orders "while rehearing of the initial order[] is pending." Order No. 871, *Limiting Authorizations to Proceed*

*with Construction Activities Pending Rehearing*, 171 FERC ¶ 61,201, at 5 (June 9, 2020). This welcome change defangs much of the injustice associated with deferred judicial review. But if the Commission ever reverts to its old policy, that approach would be ripe for a challenge under the Administrative Procedure Act. Approving irreversible construction in the midst of a properly substantive rehearing might qualify as arbitrary and capricious.

However, as the court notes, the Commission's "new rule does not . . . prevent eminent domain proceedings from going forward based on the underlying certificate order." Maj. Op. at 18 n.2. Those proceedings are the final piece of the puzzle. In this case, the district court relied on the Certificate Order to support condemnation even though the Commission had (purportedly) "granted" rehearing. *See Transcon. Gas Pipe Line Co. v. Permanent Easements for 2.14 Acres & Temp. Easements for 3.59 Acres in Conestoga Township, Lancaster County, Pa., Tax Parcel No. 1201606900000*, 2017 WL 3624250, at *3-4 (E.D. Pa. Aug. 23, 2017). But that practice doesn't follow from the district court's conclusion that it lacked jurisdiction to review the *merits* of the underlying Certificate Order. *See id.* at *3 (collecting cases and explaining that "the validity of a FERC Order can only be challenged in front of FERC, and then in the [D.C. Circuit]").

In any event, the district court should not plow ahead in the face of a true grant of rehearing. Nothing in the Natural Gas Act prevents a district court from holding an eminent-domain action in abeyance until the Commission completes its reconsideration of the underlying certificate order. Although "[t]he *filing* of an application for rehearing . . . shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order," 15 U.S.C. § 717r(c) (emphasis added), that provision doesn't limit a district court's authority

to stay its hand after the Commission grants a substantive application for rehearing. And now that the era of tolling orders is over, a district court shouldn't assume that a grant of rehearing is merely a dilatory ploy. Alternatively, one of my colleagues suggested at oral argument that once the Commission grants rehearing of a certificate order, that order should be regarded as nonfinal, *see* Oral Arg. Tr. 113:9-21 (comments of KATSAS, J.); *see also Bennett v. Spear*, 520 U.S. 154, 177-78 (1997), and a nonfinal order is presumably an invalid basis for transferring property by eminent domain. That suggestion merits a closer look.

\* \* \*

The court's decision rightly jettisons the Commission's signature stalling tactic. But it doesn't alter the fact that the Commission can postpone review by granting rehearing. Those concerned about potential abuse of that power should take heart: The Commission's recent rule change is a major step in the right direction, and courts possess other tools to protect landowners.

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring in the judgment and dissenting in part: With little regard for *stare decisis*, my colleagues overrule a statutory construction that our court has employed for over fifty years. Because "*stare decisis* . . . is a 'foundation stone of the rule of law,'" *Allen v. Cooper*, 140 S. Ct. 994, 1003 (2020) (quoting *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 798 (2014)), and reversing our precedent "demand[s] a 'special justification,' over and above the belief 'that the precedent was wrongly decided,'" *id.* (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014)), and because I believe no special justification exists here, I would leave it to the political branches to determine whether and how to limit FERC's use of tolling orders.

Even for the en banc court, *stare decisis* is the rule and overturning precedent the rare exception. This is especially true in the context of a statutory construction, where "[c]onsiderations of *stare decisis* have special force." *Patterson v. McLean Credit Union*, 491 U.S. 164, 172 (1989). Put differently,

> [t]he burden borne by a party urging the disavowal of an established precedent is greater "where the Court is asked to overrule a point of statutory construction . . . for here, unlike in the context of constitutional interpretation, . . . Congress remains free to alter what we have done."

*United States v. Burwell*, 690 F.3d 500, 504 (D.C. Cir. 2012) (en banc) (quoting *Patterson*, 491 U.S. at 172–73); *see also Hilton v. S.C. Pub. Rys. Comm'n*, 502 U.S. 197, 205 (1991) (*stare decisis* "is most compelling" in "pure question of statutory construction"); *Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015) ("[U]nlike in a constitutional case, critics of our [prior] ruling can take their objections across

the street, and Congress can correct any mistake it sees."). We therefore overturn an earlier statutory interpretation only "under a very narrow range of circumstances." *Burwell*, 690 F.3d at 504.

The majority states that "[w]e took this case en banc to *address* a focused question of statutory construction," Majority Op. 15 (emphasis added), and that it reviews this "pure question of law" *de novo*, *id.* at 19. It errs in both regards. In fact, we are *re*addressing our construction of 15 U.S.C. § 717r(a) and our review, far from *de novo*, is constricted by the "special force" of *stare decisis*, *Patterson*, 491 U.S. at 172, which bars overruling precedent without "special justification," *Allen*, 140 S. Ct. at 1003 (citation omitted). We emphatically do *not* write on a blank slate.

The majority concludes that "[t]o the *extent* our prior decisions upheld [FERC's] use of tolling orders . . . , they are overruled in relevant part," Majority Op. 34 (emphasis added), but reaches this conclusion without proper regard for the "extent" to which tolling orders have been upheld. Since 1969 we have consistently held that FERC's tolling orders "act upon" a petition for rehearing under § 717r(a). *See, e.g.*, *Cal. Co. v. Fed. Power Comm'n*, 411 F.2d 720, 722 (D.C. Cir. 1969) (per curiam) (section 717r(a) merely "establish[es] a presumption from agency silence"); *Del. Riverkeeper Network v. FERC*, 895 F.3d 102, 113 (D.C. Cir. 2018) ("We have long held that FERC's use of tolling orders is permissible under the Natural Gas Act . . . ."). And we did so with good reason. Now—fifty years after we first spoke on the issue and two years since we last did—we reverse caselaw on which the public, the government, our sister circuits and the Bar have long relied.

My colleagues do not skirt *stare decisis* for want of an applicable standard. The Supreme Court has "articulated in some detail the circumstances in which it may find sufficient justification for overturning a statutory precedent," *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 875 (D.C. Cir. 1992) (en banc), with "the primary reason for the Court's shift in position [being] the intervening development of the law, through either the growth of judicial doctrine or further action taken by Congress," *id.* at 875–76 (quoting *Patterson*, 491 U.S. at 173). The Supreme Court will also overrule precedent that is "a positive detriment to coherence and consistency in the law." *Id.* at 876 (quoting *Patterson*, 491 U.S. at 173). As a circuit court, we "may reexamine [our] own established interpretation of a statute if [we] find[] that other circuits have persuasively argued a contrary construction" or when the en banc court "decides that [a] panel's holding on an important question of law was fundamentally flawed." *Id.* None of these factors support our reversal of *California Co.* and its progeny.

The "growth of judicial doctrine" since we decided *California Co.* cuts *against* reversal. Indeed, the majority breaks new ground as the first court of appeals to disapprove FERC's use of tolling orders since the Natural Gas Act became law in 1938. *See Berkley v. Mountain Valley Pipeline, LLC*, 896 F.3d 624, 631 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 941 (2019); *Kokajko v. FERC*, 837 F.2d 524, 525 (1st Cir. 1988) (per curiam); *Gen. Am. Oil Co. of Tex. v. Fed. Power Comm'n*, 409 F.2d 597, 599 (5th Cir. 1969) (per curiam). And it does so despite the Congress's long-standing awareness that multiple courts of appeals have approved FERC's tolling orders. *See Jackson v. Modly*, 949 F.3d 763, 772–73 (D.C. Cir. 2020) ("The Supreme Court has held that 'Congress' failure to disturb a consistent judicial interpretation of a statute may provide some indication that "Congress at least acquiesces in, and

apparently affirms, that interpretation.""") (quoting *Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 338 (1988) (brackets omitted)). In other words, it is not our precedent but today's decision that is a "positive detriment to coherence and consistency in the law." *Patterson*, 491 U.S. at 173. The majority initiates the type of "erratic" change in the law that *stare decisis* is designed to prevent.

> [T]he important doctrine of *stare decisis*, the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion[,] . . . permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact. While *stare decisis* is not an inexorable command, . . . any detours from the straight path of *stare decisis* . . . have occurred for articulable reasons, and only when the Court has felt obliged to bring its opinions into agreement with experience and with facts newly ascertained.

*Vasquez v. Hillery*, 474 U.S. 254, 265–66 (1986) (citation and quotation marks omitted).

And although I share the majority's commitment to textualism, *see* Majority Op. 33, I would exercise a degree of judicial humility before deciding that every court to consider FERC's use of tolling orders since § 717r was enacted eighty-two years ago failed to understand what the statute plainly commands. And regardless whether FERC's current interpretation of § 717r(a) is entitled to *Chevron* deference,

*see id.* at 20, questions of deference answered decades ago, *see, e.g.*, *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649–50 (1990), are not a "compelling justification" to depart from precedent this far down the road, *Hilton*, 502 U.S. at 202.

The majority emphasizes that FERC's use of tolling orders "has become virtually automatic." Majority Op. 15. But the frequency with which FERC issues tolling orders is entirely unrelated to whether *California Co.* was correctly decided. Moreover, we should hesitate to premise our reversal on FERC's having relied on our cases, as our holdings *should* be reliable. "*Stare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, *fosters reliance on judicial decisions*, and contributes to the actual and perceived integrity of the judicial process." *Janus v. Am. Fed'n of State, County, & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2478 (2018) (emphasis added) (citation omitted). Under today's approach, government agencies may rely on our cases up to a point— which only we know—before their reliance goes too far and we pull the rug from under them. The better course is to stand by our decisions and allow the political process to resolve the issue.

Section 717r(a) has not changed since Natural Gas Act was enacted in 1938. Overruling *California Co.* and its progeny because a majority of our court now believes those cases misconstrued § 717r(a) renders *stare decisis* meaningless and draws the Judiciary into a policymaking role that is the province of the elected branches.[1] Our decision could short-

---

[1] The widely held view that tolling orders are valid under § 717r(a) makes sense. Given that "we afford FERC an extreme degree of deference" with regard to its "technical expertise," *Myersville Citizens for a Rural Cmty., Inc. v. FERC*, 783 F.3d 1301, 1308 (D.C. Cir. 2015) (citation and quotation marks omitted), and

6

circuit action by both FERC, *see* Majority Op. 17 n.2, and the Congress, *see* Letter from Jamie Raskin, Chairman, House Subcomm. on Civil Rights & Civil Liberties, to Neil Chatterjee, Chairman, Fed. Energy Regulatory Comm'n (Feb. 18, 2020), that seeks to alleviate the negative results of tolling orders and creates a circuit split that could force the Supreme Court to weigh in and further enmesh the Judiciary in a matter better left to elected officials.

I share my colleagues' concern for the predicament that tolling orders create for some homeowners. But I continue to agree with my esteemed colleague, Judge Buckley, writing for the en banc court in 1992, and "accept the wisdom of Justice Brandeis's observation . . . that '[*s]tare decisis* is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right.'" *Critical Mass Energy Project*, 975 F.2d at 877 (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406 (1932) (Brandeis, J., dissenting)). Notwithstanding our constitutional duty to "say what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), we should not obliterate solid precedent with only a perfunctory "by your leave." And, in declaring the law governing FERC's application of its expertise, I believe we should exhibit Third Branch modesty in deciding how our country handles a complex undertaking like the construction of natural gas pipelines. Accordingly, I

---

that aggrieved homeowners have a constitutionally mandated remedy—i.e., just compensation under the Takings Clause, U.S. CONST. amend. V—it is reasonable that the Congress worded § 717r(a) merely to "establish a presumption from agency silence," *Cal. Co.*, 411 F.2d at 722. But regardless whether my colleagues agree with the *California Co.* court, the salient point today is our lack of any special justification to depart from *stare decisis*. *See Allen*, 140 S. Ct. at 1003.

respectfully dissent *pro tanto* from the overruling of *California Co.* and its progeny.