[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Moraine Wind, L.L.C.*, Slip Opinion No. 2024-Ohio-3224.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-3224

IN RE APPLICATION OF MORAINE WIND, L.L.C., FOR CERTIFICATION AS AN ELIGIBLE OHIO RENEWABLE ENERGY RESOURCE GENERATING FACILITY.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Moraine Wind, L.L.C.*, Slip Opinion No. 2024-Ohio-3224.]

*Public utilities—R.C. 4903.10 does not allow Public Utilities Commission of Ohio ("PUCO") to extend statutory 30-day deadline for filing applications for rehearing of a matter determined in a PUCO proceeding—A PUCO order that "grants" an application for rehearing for limited purpose of further consideration of the application does not grant the application within meaning of R.C. 4903.10, no matter how the order is labeled—Appellant's application for rehearing of PUCO order certifying out-of-state wind farms as eligible Ohio renewable-energy-resource-generating facilities was denied by operation of law when PUCO failed to timely grant or deny the application—PUCO's motion to dismiss for lack of jurisdiction appellant's appeal from PUCO's order certifying the wind farms denied.*

(No. 2024-0098—Submitted April 9, 2024—Decided August 27, 2024.)

APPEAL from the Public Utilities Commission, Nos. 21-516-EL-REN, 21-517-EL-REN, 21-531-EL-REN, 21-532-EL-REN, 21-544-EL-REN, and 22-380-EL-REN.

_____

DEWINE, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER and DONNELLY, JJ., joined. STEWART, J., dissented, with an opinion. BRUNNER, J., dissented. DETERS, J., did not participate.

**DEWINE, J.**

{¶ 1} This case is before us on appeal from an order of the Public Utilities Commission of Ohio ("PUCO"). PUCO has filed a motion to dismiss the appeal, arguing that this court lacks jurisdiction because the matter was still pending before PUCO on rehearing at the time the notice of appeal was filed. We deny the motion to dismiss, because we determine that the application for rehearing was denied by operation of law when PUCO failed to timely grant or deny the application.

{¶ 2} Relevant here, R.C. 4903.10 states that if PUCO "does not grant or deny [an] application for rehearing within thirty days from the date of filing thereof, it is denied by operation of law." That is precisely the scenario that occurred in this case. In the proceeding below, PUCO issued an order and Carbon Solutions Group, L.L.C. ("CSG") applied for rehearing. PUCO did not grant or deny the application for rehearing within 30 days. Instead, PUCO purported to give itself an extension, issuing an entry stating that it was granting the application "for the limited purpose of further consideration of the matters specified within the application for rehearing."

{¶ 3} Nothing in statute gives PUCO the authority to extend the statutory deadline. Thus, we give effect to the plain terms of R.C. 4903.10. Because PUCO did not grant or deny the application for rehearing within 30 days, the application

for rehearing was "denied as a matter of law," R.C. 4903.10. And because CSG timely appealed from that denial, this court has jurisdiction over CSG's appeal.

### *CSG Applies for Rehearing and PUCO Grants Itself an Extension*

{¶ 4} Ohio law requires retail electric suppliers to obtain part of their electricity from renewable-energy sources, such as solar and wind power. *See* R.C. 4928.64(B)(1) and (2). These resources may be purchased from either in-state or out-of-state generating facilities. R.C. 4928.64(B)(3). An out-of-state supplier must be certified as an eligible Ohio facility. *See* R.C. 4928.64(A)(1), 4928.64(B)(3)(b), and 4928.645; Adm.Code 4901:1-40-04(D).

{¶ 5} Moraine Wind, Rugby Wind, L.L.C., Elm Creek II Wind, L.L.C., Buffalo Ridge II Wind, L.L.C., Barton Windpower 1, and Barton Windpower 2 are out-of-state wind farms. They each applied to PUCO for certification in Ohio. CSG—whose clients include Ohio-based renewable-energy suppliers—intervened, opposing each application.

{¶ 6} In September 2023, PUCO issued an opinion and order approving all six applications. CSG filed an application for rehearing on October 20. On November 16, PUCO issued an entry granting CSG's rehearing application "for the limited purpose of further consideration of the matters specified therein."

{¶ 7} On January 17, 2024, while PUCO was considering CSG's rehearing application, CSG appealed PUCO's September 20 order to this court. PUCO moved to dismiss the appeal, arguing that we lack jurisdiction over the appeal because CSG's rehearing application was still pending before PUCO.[1]

### *The Plain Text of R.C. 4903.10 Does Not Allow PUCO to Extend the Statutory Deadline*

{¶ 8} A party may appeal an order of PUCO by filing a notice of appeal within 60 days "after the date of denial of the application for rehearing by operation

---

1. During the pendency of this appeal, PUCO entered an order denying CSG's application for rehearing.

of law or . . . of the order denying an application for rehearing or, if a rehearing is had, of the order made after such rehearing." R.C. 4903.11. CSG contends that this court has jurisdiction over the appeal because it filed a timely notice of appeal after its application for rehearing was denied as a matter of law when PUCO failed to render a decision on the merits of the application within 30 days. PUCO maintains that this court lacks jurisdiction because CSG's application for rehearing was still pending at the time CSG filed its notice of appeal.

{¶ 9} At issue is what PUCO describes as its "general practice of granting rehearing applications for the limited purpose of extending its time to review the application" (emphasis omitted). In PUCO's view, such a practice is consistent with R.C. 4903.10 because its November 16 order granted rehearing, albeit for the limited purpose of "considering the merits of the issues raised in the application."

{¶ 10} CSG responds that the statute requires that PUCO "evaluate[] [the] application and affirmatively decide[] whether to grant or deny rehearing within the statutory period." In CSG's view, PUCO "may grant rehearing and take the time it needs to evaluate a prior order before issuing an order on rehearing" but it may not simply grant rehearing for the purpose of securing a continuance of the 30-day deadline.

{¶ 11} On a plain reading of the text, CSG has the better of the argument. The statute mandates that PUCO grant or deny an application for rehearing within 30 days. And while PUCO may have labeled its November 16 entry as an entry granting rehearing, the entry did nothing of the sort. The entry didn't vacate PUCO's prior order or reach any determination as to whether reconsideration of the prior order was warranted. Rather, as PUCO acknowledges, its November 16 order merely gave itself more time to decide whether to grant the rehearing application.

{¶ 12} In enacting R.C. 4903.10, the General Assembly mandated that PUCO grant or deny an application for rehearing within 30 days—and that if it failed to do so, the application would be denied as a matter of law. Nowhere did

4

the General Assembly grant PUCO the authority to extend the statutory deadline. PUCO's gloss on the statute effectively removes the 30-day deadline from the statute, allowing PUCO to grant itself unlimited amounts of time to decide whether to grant or deny rehearing.

### *PUCO's Arguments to the Contrary Are Unconvincing*

{¶ 13} Despite the plain language of the statute, PUCO contends that this court has blessed its general practice of extending the statutory deadline to give itself more time to decide whether to grant a rehearing application. In support, it cites *State ex rel. Consumers' Counsel v. Pub. Util. Comm.*, 2004-Ohio-2894. *Consumer's Counsel* was a writ action in which the Ohio Consumer's Counsel sought to prevent PUCO from granting several applications for rehearing. *Id*. at ¶ 4. In a per curiam opinion, this court denied the writ on the basis that the request was moot because PUCO had denied the applications for rehearing. *Id.* at ¶ 12-14. In dicta, this court went on to observe that "[n]othing in R.C. 4903.10 or precedent specifically prohibited" PUCO from granting itself additional time to consider the merits of rehearing applications. *Id.* at ¶ 19.

{¶ 14} Because our dicta in *Consumer's Counsel* about R.C. 4903.10 was unnecessary to resolve the case, it "has no precedential force here," *State ex rel. DiFranco v. S. Euclid*, 2014-Ohio-538, ¶ 24, *superseded by statute on other grounds as stated in State ex rel. Cincinnati Enquirer v. Cincinnati*, 2019-Ohio-3876, ¶ 12. Indeed, in a case decided after *Consumer's Counsel*, we recognized that the issue remained unsettled. *See In re Complaint of Wingo v. Nationwide Energy Partners, L.L.C.*, 2020-Ohio-5583, ¶ 28. In *Wingo*, we noted (again in dicta) that a party "may well have a legitimate complaint" about PUCO's practice of granting rehearing solely for the purpose of extending the 30-day statutory deadline, but we declined to reach the issue on the basis that under the facts of that case any injury was not redressable on appeal. *Id.* In addition to lacking

precedential authority, the *Consumer's Counsel* dicta is not persuasive: it is at odds with the plain language of R.C. 4903.10. Thus, we decline to follow it in this case.

{¶ 15} PUCO does offer one textual argument in support of its reading of the statute. Specifically, it points to a portion of R.C. 4903.10 which provides:

> If the commission grants such rehearing, it shall specify in the notice of such granting the purpose for which it is granted. The commission shall also specify the scope of the additional evidence, if any, that will be taken . . . .
>
> If, after such rehearing, the commission is of the opinion that the original order or any part thereof is in any respect unjust or unwarranted, or should be changed, the commission may abrogate or modify the same; otherwise such order shall be affirmed.

Based on this language, PUCO argues that for an order granting rehearing to be final, it must do two separate things: (1) grant rehearing and (2) issue a decision abrogating, modifying, or affirming its original order. It maintains that because the second step had not been completed when CSG filed its notice of appeal, CSG's appeal was premature.

{¶ 16} PUCO is correct that the statute allows it to grant an application for rehearing within the statutory 30-day period and then later issue its final decision after the expiration of the 30-day period. But what PUCO fails to recognize is that the statute requires a substantive determination within 30 days about whether to grant rehearing. PUCO may determine that rehearing is warranted and hear "additional evidence." R.C. 4903.10. Or it may determine that rehearing is warranted, but no additional evidence is required. *Id.* (PUCO shall "specify the scope of the additional evidence, *if any*" [emphasis added]). But it must deny or

6

grant the application for rehearing; if it doesn't, the application is denied by "operation of law." *Id.*

{¶ 17} In this case, PUCO did not rule on the application for rehearing. On the contrary, the effect of its November 16 order was to put off consideration of the application until a future date. Because PUCO failed to rule on the application for rehearing within 30 days, the application was denied by operation of law.

{¶ 18} The dissent's view that PUCO's order constituted a grant of rehearing is inconsistent with the plain terms of that order. That order specified that PUCO was granting the application for rehearing only "for the limited purpose of further consideration of the matters specified therein." Despite the label PUCO attached to the order, the order itself made clear that it was nothing more than an extension to allow PUCO "further consideration of the matters specified" in the application for rehearing.

{¶ 19} PUCO also suggests that it has "broad authority by which to conduct its hearings" and defends its general practice of granting rehearing "for the limited purpose of having more time to further consider the issues when necessary to make reasoned decisions." But while PUCO may have some discretion in the manner in which it conducts its hearings, its timeline for acting on a motion for rehearing has been expressly established by the legislature. *See* R.C. 4903.10. It must grant or deny rehearing within 30 days, a legislative policy judgment presumably made to ensure that aggrieved parties are able to achieve timely judicial review of PUCO decisions. PUCO may find the legislatively prescribed timeline insufficient to allow it "to make reasoned decisions" in some cases, but that is a matter that it should take up with the General Assembly. It is not for this court to create judicial end-runs around clear legislative commands.

{¶ 20} We also note that an en banc panel of the United States Court of Appeals for the District of Columbia dealt with facts very similar to those at bar and reached a result very similar to ours today. *See Allegheny Defense Project v.*

7

*Fed. Energy Regulatory Comm.*, 964 F.3d 1, 19 (D.C.Cir. 2020). That case involved a statute that requires a party aggrieved by an order of the Federal Energy Regulatory Commission ("FERC") to file an application with the commission for rehearing and have that application denied before the party may seek judicial review. 15 U.S.C. 717r(a) and (b). That statute—like the one at bar—further provides that "[u]nless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied," 15 U.S.C. 717r(a).

{¶ 21} FERC followed the same playbook as PUCO. It issued an order that "granted [rehearing] for the limited purpose of further consideration." (Bracketed text in original.) *Allegheny Defense Project* at 6. Two affected parties petitioned for review in federal court. FERC moved to dismiss the federal action, arguing that the petitions were premature because FERC had yet to resolve the matter on the merits.

{¶ 22} The en banc court ultimately agreed to take up an issue that is nearly identical to the one before us today: "Does the Federal Energy Regulatory Commission 'act upon' an application for rehearing within the meaning of Section 717r of the Natural Gas Act by issuing a tolling order that does nothing more than prevent the application from being deemed denied by agency inaction and preclude the applicant from seeking judicial review until the Commission acts?" *Id*. at 9.

{¶ 23} In answering this question, the D.C. Circuit found it appropriate to look at FERC's practice of issuing orders that effectively granted itself an extension to decide applications, noting that FERC had acknowledged at oral argument that it had entered such orders as a matter of routine. *Id*., 946 F.3d at 9. The D.C. Circuit lamented the "real-world consequences" of such orders, which "can prevent aggrieved parties from obtaining timely judicial review of [FERC's] decision." *Id.* at 10.

{¶ 24} The D.C. Circuit rejected the label-is-determinative logic employed by FERC and advocated for by the dissent today. It explained that the federal statute "is not such an empty vessel. The question is not one of labels, but of signification: Did the [order] amount to a 'grant' of rehearing within the meaning of the statute, or instead amount only to inaction on the application, which would trigger the possibility of judicial review as a deemed denial. The [order] fell into the latter camp." *Id*. at 13.

{¶ 25} The court elaborated:

A grant of rehearing cannot consist solely of a grant of additional time to decide whether to grant rehearing. Yet the Commission admits that its purported grant of rehearing in this case, as is true "in virtually every case," was made without any substantive engagement with the rehearing application. Rather, the sole purpose of the [order] was to take "some" kind of "action on [the application] within 30 days" just to give the Commission more time "to issue a substantive order" on the application at some unspecified later date.

(Citation omitted.) (Latter bracketed text in original.) *Id.* Despite FERC having labeled its order a "grant," the D.C. Circuit found that the order was "not a grant of rehearing of the challenged order; it [was] kicking the can down the road." *Id.* at 13-14.

{¶ 26} The effect of FERC's order, the D.C. Circuit explained, was to "delete the thirty-day time limit and the deemed-denied provision from the statute," allowing it to take as much time as it wanted, leaving the applicant "trapped, unable to obtain judicial review." *Id.*, 964 F.3d at 15. But, the D.C. Circuit explained, FERC "has no authority to erase and replace the statutorily prescribed jurisdictional consequences of its inaction." *Id.* Thus, the D.C. Circuit found that regardless of

the label attached, an order granting rehearing for the purpose of further considering the application for rehearing "is not the kind of action on a rehearing application that can fend off a deemed denial and the opportunity for judicial review." *Id.* at 3-4.

{¶ 27} Although the D.C. Circuit's decision is not precedential when it comes to our interpretation of state law, its logic is persuasive. Nothing in statute allows PUCO to grant itself additional time to consider an application for rehearing. And an order that on its face simply grants PUCO more time to consider an application for rehearing is not a grant of rehearing, no matter the label attached. Calling a duck a rabbit doesn't make it one.

### *Conclusion*

{¶ 28} CSG's application for rehearing was denied by operation of law 30 days after it had been filed when PUCO failed to affirmatively grant or deny the application. *See* R.C. 4903.10. CSG timely filed an appeal within 60 days of the application's denial. *See* R.C. 4903.11. Accordingly, we deny PUCO's motion to dismiss.

Motion denied.

_____

**STEWART, J., dissenting.**

{¶ 29} I dissent from the majority's decision denying appellee Public Utilities Commission of Ohio's motion to dismiss the appeal filed by appellant, Carbon Solutions Group, L.L.C. ("CSG"), for lack of jurisdiction, because there is no question that the appeal was filed while this case was still pending before the commission. While the majority opinion makes salient points in its analysis, its focus on the commission's reasoning for granting the application for rehearing is misplaced.

{¶ 30} We have authority to review appeals from orders of the commission only as conferred by law. Ohio Const., art. IV, § 2(B)(2)(d). Here, the relevant

laws are R.C. 4903.10 and 4903.11, which set forth the commission's duties with respect to applications for rehearing and the deadline for a party to appeal from the commission's denial of an application for rehearing. In this case, the commission had not denied CSG's application for rehearing before CSG filed its appeal to this court. On the contrary, the commission had granted CSG's application for rehearing, "specify[ing] in the notice of such granting the purpose for which it [was] granted," R.C. 4903.10, and it did so within 30 days of the application's filing, *see id.* Additionally, the commission had not issued a journal entry abrogating, modifying, or affirming its original order. *See id.* Therefore, under a plain reading of R.C. 4903.10, we lack jurisdiction to consider this appeal.

{¶ 31} The timeline accurately set forth in the majority opinion shows that this case was pending before the commission when CSG's appeal to this court was filed. That fact alone should end our inquiry. Where the majority goes astray is in determining that the commission did not rule on CSG's application for rehearing within 30 days of the application's filing because the purpose of the commission's first entry on the application for rehearing was to give itself more time to consider the application. And this, the majority states, is not authorized by law. Contrary to what the majority contends, the commission did rule on the application within 30 days of its filing by CSG, and the commission did not state in its order that it was granting the application for rehearing to give itself more time to decide whether to *really* grant the application or to determine whether its decision to grant the application was correct.

{¶ 32} It is well established that a court speaks through its journal entries, *see State v. Hampton*, 2012-Ohio-5688, ¶ 15, and there is no reason that the same should not hold true for administrative agencies. Such entries and orders—not after-the-fact explanations—are what we must consider when determining whether we have jurisdiction.

{¶ 33} The entry at issue here was simple and clear, and no amount of scrutiny can change the facts that (1) the commission acted within the statutory time frame and (2) at the time this appeal was filed, the commission could have issued an entry abrogating, modifying, or affirming its order that is now on appeal. We now know, of course, that the commission did not issue an entry abrogating, modifying, or affirming its original order, but this fact came to light *after* the appeal had already been filed. In other words, the majority uses the commission's February 21, 2024 entry denying the application for rehearing that it had granted on November 16, 2023, to say that because that prior ruling was not authorized by law, it is a nullity. But if anything should be deemed null, it is the commission's entry denying the application for rehearing because R.C. 4903.10 does not authorize the commission to issue such a ruling beyond 30 days after the application's filing. But the effect of the unauthorized entry was to affirm the commission's order, leaving no question that we would have jurisdiction over the appeal if CSG had waited until after February 21, 2024, to file it.

{¶ 34} It is not that the commission used the word "grant" in its November 16, 2023 entry that controls how we should rule on the motion to dismiss; it is that the commission followed the requirements of the statute in granting the application for rehearing. The entry met the statutory requirements because in it, the commission did the following: (1) granted the application for rehearing, (2) identified the purpose for which the application was granted ("for the limited purpose of further consideration of the matters specified within the application for rehearing," *In re Application of Moraine Wind, L.L.C.*, PUCO Nos. 21-516-EL-REN, 21-517-EL-REN, 21-531-EL-REN, 21-532-EL-REN, 21-544-EL-REN, and 22-380-EL-REN, 2023 WL 8118256, *2 (Nov. 16, 2023)), and (3) specified the scope of additional evidence, if any, that was to be considered (here, no additional evidence was to be considered). *See* R.C. 4903.10(B). The fact that the language of the entry tracked the language of the statute is neither a basis for criticism nor a

basis for our jurisdiction. Although the commission admits in its motion to dismiss this appeal that by issuing the November 16, 2023 entry, it was granting itself more time to decide whether to grant the application for rehearing, the language of the entry does not indicate that the commission was acting outside the statute or that the commission would not subsequently abrogate, modify, or affirm its order based on the application for rehearing or that it was relinquishing its authority to do so. It is the post-entry information that gives the majority the tool to manufacture jurisdiction, not the plain application of R.C. 4903.10 and 4903.11.

{¶ 35} This case was pending before the commission when CSG filed its appeal to this court. While I agree that R.C. 4903.10 does not permit the commission to grant an application for rehearing for the sole purpose of giving itself additional time to consider the application, when CSG's appeal to this court was filed, it was unknown what the commission would ultimately decide: it could have affirmed, modified, or abrogated its original order, or it could have held another hearing. *See* R.C. 4903.10. That we now know the commission took none of those actions does not retroactively erase the jurisdiction that the commission had over the case when CSG filed its appeal to this court.

{¶ 36} Moreover, we cannot conclude that the application for rehearing was denied by operation of law, because the commission did in fact rule on the application within the statutorily prescribed 30-day period, regardless of how the majority opinion chooses to interpret the November 16, 2023 entry granting the application.

{¶ 37} Because we did not have jurisdiction over CSG's appeal to this court when it was filed, I dissent from the majority's decision denying the commission's motion to dismiss CSG's appeal.

_____

Whitt Sturtevant, L.L.P., and Mark A. Whitt, for appellant, Carbon Solutions Group, L.L.C.

Dave Yost, Attorney General, and John H. Jones, Thomas G. Lindgren, and Lauren M. Williams, Assistant Attorneys General, for appellee, Public Utilities Commission of Ohio.

_____