**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Columbia Gas of Ohio, Inc.*, Slip Opinion No. 2026-Ohio-2381.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-2381

IN RE APPLICATION OF COLUMBIA GAS OF OHIO, INC., FOR AUTHORITY TO AMEND ITS FILED TARIFFS TO INCREASE RATES AND CHARGES FOR GAS SERVICES AND RELATED MATTERS; ENVIRONMENTAL LAW & POLICY CENTER ET AL., APPELLANTS; PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE; COLUMBIA GAS OF OHIO, INC., INTERVENING APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Columbia Gas of Ohio, Inc.*, Slip Opinion No. 2026-Ohio-2381.]**

*Public utilities—Public Utilities Commission did not err in allowing utility to increase its fixed monthly charge to residential customers or in approving elimination of utility's demand-side-management programs for non-low-income customers—Commission's orders affirmed.*

(No. 2024-1548—Submitted October 29, 2025—Decided June 25, 2026.)

APPEAL from the Public Utilities Commission, Nos. 21-637-GA-AIR, 21-638-GA-ALT, 21-639-GA-UNC, and 21-640-GA-AAM.

————————

BRUNNER, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, SHEEHAN, HAWKINS, and SHANAHAN, JJ., joined. MICHELLE J. SHEEHAN, J., of the Eighth District Court of Appeals, sat for DETERS, J.

**BRUNNER, J.**

{¶ 1} In the proceedings before the Public Utilities Commission of Ohio under review, the commission modified and approved a joint stipulation and recommendation, which the Environmental Law & Policy Center ("ELPC") and the Citizens' Utility Board of Ohio ("CUB") had opposed. Among other things, the commission granted a distribution-rate increase to Columbia Gas of Ohio, Inc. ("Columbia"), allowed Columbia to increase its fixed monthly charge to residential customers, and approved the elimination of Columbia's demand-side-management ("DSM")[1] programs for non-low-income customers.

{¶ 2} ELPC and CUB (collectively, "appellants") filed a joint notice of appeal challenging the commission's decision modifying and approving the joint stipulation and recommendation. Appellants maintain that the commission's decision is unlawful because the evidentiary record does not support the commission's approval of the stipulation. Specifically, appellants claim that the commission erred in allowing Columbia to significantly raise its fixed monthly charge to residential customers while at the same time approving the elimination of Columbia's DSM programs for non-low-income customers.

{¶ 3} As discussed in detail below, we affirm the commission's decision.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 4} The underlying case began in 2021 when Columbia filed an application with the commission to increase its distribution rates under R.C. 4909.18 and to change its accounting methods. Columbia also sought approval of

---

1. DSM programs are public-utility initiatives that encourage consumers to use less energy or use it more efficiently, with the goal of reducing overall energy demand. *See* Adm.Code 4901:5-5-01(F).

an alternative-rate plan under R.C. 4929.05(A), which allows for the filing of an application to establish or change a rate that is alternative to the requirements establishing rates and charges under R.C. 4909.15. Under the alternative-rate plan, Columbia requested to continue and modify certain existing riders and to establish a new rider. Finally, Columbia filed an application to continue its existing DSM programs for its commercial and residential customers.

{¶ 5} The commission staff investigated the applications and filed a written report under R.C. 4909.19. The commission granted motions to intervene in the proceedings that were filed by several parties. Various intervening parties filed objections to the staff report.

{¶ 6} In October 2022, Columbia, commission staff, and several intervening parties (collectively, the "signatory parties") filed a joint stipulation and recommendation[2] averring that, if it were adopted, the joint stipulation and recommendation would resolve all issues in the proceedings. Among other things, the signatory parties stipulated to a revenue increase of $68.192 million for Columbia, excluding all riders. The stipulation also provided that Columbia would no longer provide its DSM programs to non-low-income customers; rather, starting on January 1, 2023, Columbia's DSM programs would be limited solely to the company's low-income customer program known as "WarmChoice." The stipulation further provided that Columbia would no longer earn and collect from customers any shared savings[3] as part of its DSM programs. The signatory parties agreed that the commission should approve the rider adjustments requested under Columbia's alternative-rate plan. ELPC, CUB, and the Ohio Partners for Affordable Energy ("OPAE") opposed the stipulation.

---

2. Columbia subsequently filed corrected versions of the stipulation on November 3 and 9, 2022.

3. Generally, shared-savings programs involve incentive payments from customers to the utility for the utility's introduction of cost-effective, energy-efficiency, and peak-demand-reduction programs. *See In re Application of Ohio Edison Co.*, 2019-Ohio-4196, ¶ 2, fn. 1.

**{¶ 7}** Under the terms of the stipulation, Columbia would retain the straight fixed variable ("SFV") rate design established in a prior rate case in which we upheld the commission's approval of the SFV rate design that the commission first adopted in 2008. *See Ohio Consumers' Counsel v. Pub. Util. Comm.*, 2010-Ohio-134; *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 2010-Ohio-6239. Under the natural-gas rate design in existence before the adoption of the SFV rate design, natural-gas utilities recovered a small portion of their fixed delivery costs through a low, fixed monthly customer charge with the remaining fixed distribution costs recovered through a rate that varied with natural-gas usage. *Ohio Consumers' Counsel*, 2010-Ohio-6239, at ¶ 1. Because a significant portion of the utilities' fixed distribution costs depended on actual gas sales, utilities had an incentive to increase gas sales to recover those costs, which in turn prevented them from promoting energy-conservation and energy-efficiency efforts. *Ohio Consumers' Counsel*, 2010-Ohio-134, at ¶ 35. The SFV rate design reduced utilities' incentives to sell more gas by separating the utilities' recovery of their costs to deliver gas (which are predominately fixed) from the amount of gas that customers actually use (which varies from month to month). *See id.* at ¶ 35-36; *Ohio Consumers' Counsel*, 2010-Ohio-6239, at ¶ 1.

**{¶ 8}** Under the SFV rate design approved in 2008, the fixed costs of natural-gas delivery incurred by Columbia to serve its residential and small general-service customers[4] are recovered through a flat monthly charge. These customers continue to pay a variable rate for gas volumes used each month that is based on the commodity price of natural gas charged by either Columbia or the customer's gas marketer.

---

4. Small general-service class customers include residential customers as well as nonresidential customers whose natural-gas usage falls below a certain level. *See* PUCO Nos. 21-637-GA-AIR, 21-638-GA-ALT, 21-639-GA-UNC, and 21-640-GA-AAM, 2023 WL 1433900, ¶ 79-80 (Jan. 26, 2023).

{¶ 9} The commission reviewed the joint stipulation and recommendation at issue in this appeal by using the three-part test approved by this court to evaluate the reasonableness of a contested stipulation. This test requires that the stipulation (1) be a product of serious bargaining among capable, knowledgeable parties, (2) as a package, benefit ratepayers and the public interest, and (3) not violate any important regulatory principle or practice. *See Consumers' Counsel v. Pub. Util. Comm.*, 1992-Ohio-122, ¶ 15; *In re Application of Ohio Power Co.*, 2018-Ohio-4698, ¶ 39.

{¶ 10} The commission held an evidentiary hearing before reaching its decision and issued an opinion and order in January 2023 modifying and approving the stipulation; it found that with certain modifications, the stipulation satisfied the three-prong reasonableness test. *See* PUCO Nos. 21-637-GA-AIR, 21-638-GA-ALT, 21-639-GA-UNC, and 21-640-GA-AAM, 2023 WL 1433900, ¶ 1, 124-132, 169-178, 198-206, 221, 230, 236 (Jan. 26, 2023). Accordingly, the commission approved Columbia's applications to increase its distribution rates and for approval of its alternative-rate plan and permitted Columbia to discontinue its DSM programs for non-low-income customers. *Id.* at ¶ 204, 236-237.

{¶ 11} ELPC and CUB filed separate applications for rehearing in February 2023. In March 2023, the commission issued an entry granting the rehearing applications "for the limited purpose of further consideration of the matters specified on rehearing." PUCO Nos. 21-637-GA-AIR, 21-638-GA-ALT, 21-639-GA-UNC, and 21-640-GA-AAM, 2023 WL 2661433, ¶ 16 (Mar. 22, 2023). In September 2024, the commission issued an entry stating that the applications for rehearing had been denied by operation of law in light of this court's decision in *In re Application of Moraine Wind, L.L.C.*, 2024-Ohio-3224. PUCO Nos. 21-637-GA-AIR, 21-638-GA-ALT, 21-639-GA-UNC, and 21-640-GA-AAM, 2024 WL 4109993, ¶ 3 (Sept. 4, 2024). In *Moraine Wind*, we held that the commission cannot grant an application for rehearing solely for the limited purpose of further

considering the matters that had been raised in the application. *Moraine Wind* at ¶ 11-12, 17, 27.

{¶ 12} ELPC and CUB then filed a joint notice of appeal to this court, challenging the commission's orders modifying and approving the stipulation. The commission has filed a brief in defense of its orders, and Columbia has intervened and urges affirmance of the commission's orders.

## II. STANDARD OF REVIEW

{¶ 13} R.C. 4903.13 provides that a commission order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, we find the order to be unlawful or unreasonable. *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 2004-Ohio-6767, ¶ 50. The appellant bears the burden of demonstrating that the commission order is unlawful or unreasonable. *AT&T Communications of Ohio, Inc. v. Pub. Util. Comm.*, 51 Ohio St.3d 150, 154 (1990).

{¶ 14} A commission order is unlawful if it rests on an erroneous interpretation of the law or if the commission fails to follow procedures prescribed by statute or its own regulations. *See In re Application of Firelands Wind, L.L.C.*, 2023-Ohio-2555, ¶ 12. We have "complete and independent power of review as to all questions of law" in appeals from the commission. *Ohio Edison Co. v. Pub. Util. Comm.*, 1997-Ohio-196, ¶ 16; *see also Firelands Wind* at ¶ 13 (review of questions of law is de novo).

{¶ 15} A commission order is unreasonable when the commission's exercise of its discretion in making determinations within broad statutory criteria falls outside the zone of permissible statutory construction. *See Firelands Wind* at ¶ 15. Additionally, a commission order is unreasonable when the decision is manifestly contrary to the evidence in the record or when the evidence is clearly insufficient to support the decision. *See id.* at ¶ 16. Likewise, an order is unreasonable when it is internally inconsistent. *See id.*

{¶ 16} In adjudicating whether a commission order is unreasonable, we do not reweigh the evidence or second-guess the commission on questions of fact. *In re Complaints of Lycourt-Donovan v. Columbia Gas of Ohio, Inc.*, 2017-Ohio-7566, ¶ 35. We do not disturb the commission's factual determinations when the record contains sufficient probative evidence showing that the commission's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 2004-Ohio-6896, ¶ 29.

### III. ANALYSIS

{¶ 17} Appellants have raised two propositions of law on appeal, both implicating the standards that the commission used to evaluate the contested stipulation. In their first proposition of law, appellants challenge the commission's determination that the stipulation, as a package, benefitted ratepayers and was in the public interest under the second prong of the reasonableness test. And in their second proposition of law, appellants challenge the commission's determination that the stipulation did not violate any important regulatory principle or practice under the third prong of the reasonableness test.

{¶ 18} While we have approved the commission's use of the reasonableness test to evaluate contested stipulations, the commission's approval of a stipulation must be supported by the evidence of record to withstand scrutiny under the standard of review set forth in R.C. 4903.13. *See Indus. Energy Consumers of Ohio Power Co. v. Pub. Util. Comm.*, 1994-Ohio-435, ¶ 12; *Consumers' Counsel*, 1992-Ohio-122, at ¶ 14.

## A. Appellants' proposition of law No. 1: whether the evidentiary record supports the commission's finding that the stipulation, as a package, benefited ratepayers and was in the public interest

{¶ 19} Appellants contend that the commission erred in finding that the stipulation and related recommendation, as a package, benefitted ratepayers and was in the public interest under the second prong of the reasonableness test. *See In re Application of E. Ohio Gas Co.*, 2023-Ohio-3289, ¶ 52; *Elyria Foundry Co. v. Pub. Util. Comm.*, 2007-Ohio-4164, ¶ 38. According to appellants, the record does not support the commission's finding of reasonableness, even when viewing the stipulation as a whole.

{¶ 20} Appellants' first proposition of law contains three separate arguments, each containing several subparts. We address the arguments by group when appropriate for clarity of discussion. Upon review, we find that appellants have not demonstrated reversible error.

### 1. Whether the commission erred in approving an increase in the fixed monthly charge to residential customers

{¶ 21} Appellants first argue that the commission's approval of what appellants describe as a "drastic" increase in the fixed monthly charge to residential customers does not benefit ratepayers and is contrary to the public interest. Appellants challenge this fixed monthly charge for several reasons.

*a. Appellants have failed to demonstrate that the commission erred in considering the difference between the stipulated rate increase and Columbia's proposed increase*

{¶ 22} Appellants claim first that the commission erred when it determined that ratepayers and the public interest benefitted from what the commission determined in the stipulation was a substantially reduced fixed-rate increase from what Columbia had proposed. Appellants argue that the commission should have compared the stipulated fixed monthly charge of $58 to Columbia's current fixed

monthly charge of $36 rather than the fixed monthly charge of $80 that Columbia had proposed.  According to appellants, assessment of the stipulation and whether it was in the public interest should not have been measured by whether the stipulated terms deviated favorably from the terms proposed by Columbia.

{¶ 23} Appellants do not raise a question-of-law claim here but rather challenge the commission's determination solely on evidentiary grounds, citing testimony from ELPC witness Karl Rábago to support their argument.  But appellants do not address the testimony from Ohio Consumers' Counsel ("OCC") witness Kerry Adkins and commission-staff witness David Lipthratt in support of the fixed-rate increase.  *See* 2023 WL 1433900 at ¶ 169.  There was evidence for and against the fixed-rate increase, regardless of whether the starting point was Columbia's proposed fixed-rate increase of $80 or its current fixed rate of $36.  We cannot reweigh the evidence on appeal or deem some evidence to be superior to other evidence in order to determine whether the commission erred.  *See Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 2009-Ohio-6764, ¶ 34-35.

*b.  We lack jurisdiction over the remaining arguments set forth in subsection A of proposition of law No. 1 in appellants' merit brief*

{¶ 24} Appellants argue that the commission erred when it determined "that the SFV rate design sends a true and accurate price signal to customers," 2023 WL 1433900 at ¶ 173.[5]  Appellants specifically challenge the commission's reliance on the testimony of Columbia witness Russell Feingold, asserting that neither Feingold nor the commission explained how the higher fixed monthly charge sends an accurate commodity price signal to customers or how increasing the fixed monthly charge impacts the price signal.

---

5. In this context, a price signal means that changes in the cost of natural gas signal to consumers that their consumption habits may lower their cost and thereby influence their behavior to engage in more efficient consumption of natural gas.

{¶ 25} We lack jurisdiction over this claim because appellants failed to raise it in an application for rehearing before the commission as required by R.C. 4903.10(B). *See In re Application of Ohio Power Co.*, 2014-Ohio-4271, ¶ 45 (under R.C. 4903.10, an appellant is jurisdictionally barred from raising a claim on appeal that was not specifically set forth in an application for rehearing of the commission's order). As noted, CUB and ELPC filed separate applications for rehearing. CUB's application for rehearing mentioned Feingold's testimony three times, but CUB never specifically alleged that the commission erred in relying on his testimony in finding that the SFV rate design sends a true and accurate price signal to customers. As for ELPC, its rehearing application never mentioned Feingold at all, and thus, ELPC failed to raise a challenge to Feingold's testimony on rehearing.

{¶ 26} Appellants also claim that testimony presented to the commission showed that the "drastic" increase in the fixed monthly charge sends customers the wrong price signal and harms low-usage and low-income customers. According to appellants, the commission did not address, much less refute, the testimony of ELPC witness Rábago or OCC witnesses Robert Fortney and Roger Colton, who discussed the manifest unfairness of charging customers over $50 per month in fixed charges. Appellants maintain that Rábago's testimony shows that overreliance on fixed monthly charges does not benefit customers or satisfy the legal standard to set just and reasonable rates. By not considering this testimony, appellants contend, the commission failed to show how the overreliance on fixed monthly charges and the elimination of energy-efficiency programs was just, reasonable, and in the public interest.

{¶ 27} But appellants also did not specify this argument in their applications for rehearing as required by R.C. 4903.10(B), so it too is jurisdictionally barred. *See Ohio Power Co.* at ¶ 45. To begin, ELPC's application for rehearing challenged only the commission's application of the third prong of the reasonableness test—

whether the stipulation violates any important regulatory principle or practice. But the subject of appellants' first proposition of law is whether the stipulation satisfies the second prong of the test—that is, whether the stipulation, as a package, benefited ratepayers and was in the public interest. Thus, ELPC made no argument on rehearing that the commission failed to address testimony from Rábago, Fortney, or Colton concerning whether increasing the fixed monthly charge to residential customers benefited ratepayers or was in the public interest.

{¶ 28} Likewise, CUB never argued on rehearing that the commission failed to address contrary testimony from these witnesses. CUB never mentioned OCC witness Fortney in its rehearing application. CUB did cite testimony from both Rábago and Colton, but CUB did not specifically allege on rehearing that the commission failed to address the testimony of Rábago or Colton regarding the unfairness of the increased fixed monthly charge.

{¶ 29} The specificity requirement under R.C. 4903.10 is strictly construed. *Consumers' Counsel v. Pub. Util. Comm.*, 1994-Ohio-469, ¶ 11; *Discount Cellular, Inc. v. Pub. Util. Comm.*, 2007-Ohio-53, ¶ 59. Appellants did not raise the same arguments on rehearing that they have raised on appeal. Appellants' failure to preserve the specific claims about the testimony of Feingold, Rábago, Fortney, and Colton in an application for rehearing deprives us of jurisdiction to review those claims on appeal. *See In re Complaint of Cameron Creek Apts. v. Columbia Gas of Ohio, Inc.*, 2013-Ohio-3705, ¶ 23-24.

### 2. *Whether the commission's approval of the elimination of Columbia's non-low-income DSM programs was contrary to the public interest*

{¶ 30} Appellants also argue that the commission's decision approving the elimination of Columbia's non-low-income DSM programs was unreasonable and devoid of evidentiary support. We disagree.

*a. Appellants have failed to demonstrate that the commission erred in approving the elimination of Columbia's DSM programs for non-low-income customers*

**{¶ 31}** Appellants challenge the commission's approval of the stipulation provision eliminating Columbia's DSM programs for non-low-income customers. Appellants maintain that the commission failed to support its decision with substantive evidence in the record.

**{¶ 32}** Contrary to appellants' assertion, the commission did cite "substantive" evidence supporting its decision. Specifically, the commission cited evidence from OCC witness Adkins, who "testified that ratepayers would save $120 million with the elimination of the non-low-income DSM programs," 2023 WL 1433900 at ¶ 171. The commission also cited evidence from commission staff showing that under the stipulation, Columbia will not collect $10 million in shared savings from its DSM programs. *Id.* at ¶ 56, 171. And the commission cited an exhibit showing that Columbia will contribute $2.3 million, which the commission modified to $3.5 million, to a bill-payment assistance program for low-income customers, without recovering that program's costs from customers. *Id.* at ¶ 56, 171, 177.

**{¶ 33}** Appellants further contend that in approving the elimination of these DSM programs, the commission failed to consider the estimated benefits that the programs provide to customers. Again, contrary to appellants' claim, the commission expressly considered CUB's argument that customers would "lose out on important cost and energy saving benefits with the elimination of the DSM programs," *id.* at ¶ 149. Importantly, the commission considered testimony from CUB witness Thomas Bullock that the stipulation removes critical program savings that Columbia's own data demonstrated to be effective and beneficial to customers. *Id.* And the commission also considered CUB's argument that utility DSM programs benefit customers who do not sign up for a specific energy-efficiency

program because those programs save money for all customers by reducing peak electricity demand that drives costs. *Id.*

{¶ 34} In the end, the commission considered the potential loss in customer benefits from the elimination of the DSM programs. Accordingly, we reject appellants' failure-to-consider claim. *See In re Application of Columbus S. Power Co.*, 2011-Ohio-4129, ¶ 14-15; *In re Application of Columbus S. Power Co.*, 2011-Ohio-2383, ¶ 21-23.

*b. Appellants have failed to demonstrate reversible error in the commission's finding that customers could access energy-efficiency measures through the competitive market*

{¶ 35} The commission found that even with the elimination of DSM programs for non-low-income customers, "customers who wish to manage their [natural-gas] usage will continue to have access to energy efficiency measures through the competitive marketplace." 2023 WL 1433900 at ¶ 171. Appellants contend that the record contains no evidence regarding the availability of DSM programs from competitive suppliers or the marketplace itself.

{¶ 36} In its order, the commission cited testimony from CUB witness Bullock as evidence supporting this finding. *Id.* According to the commission, Bullock "acknowledged that nothing in the Stipulation precludes a customer from getting DSM services from a competitive natural gas supplier and that nothing in the Stipulation precludes a competitive natural gas supplier from offering demand-side management services to their customers." *Id.* In response to a question from one of the hearing examiners at the evidentiary hearing, Bullock agreed that the stipulation does not preclude customers from purchasing energy-efficiency measures from competitive suppliers. Appellants, however, are correct that Bullock's testimony does not support the commission's finding that "customers who wish to manage their usage *will continue to have access* to energy efficiency measures through the competitive marketplace" (emphasis added), *id.* Bullock did

not testify regarding the availability of energy-efficiency programs from competitive suppliers, and the commission cited no other evidence that competitive suppliers are currently offering any such programs in Columbia's service territory.

{¶ 37} Nevertheless, even though the commission's finding lacked some record support, appellants have failed to demonstrate reversible error. Appellants raise a manifest-weight-of-the-evidence challenge here. The purported availability of competitive-market energy-efficiency measures was one of several reasons that the commission cited in approving the elimination of DSM programs for non-low-income customers. But as noted above, in determining whether eliminating these DSM programs benefited ratepayers and was in the public interest, the commission also cited the $120 million in ratepayer savings, Columbia's agreement to forego collecting $10 million in shared savings from its DSM programs, and Columbia's $3.5 million contribution to a customer bill-payment assistance program. 2023 WL 1433900 at ¶ 56, 171, 177. And the commission's findings were supported by substantive evidence in the record. *See id.* In short, appellants have not shown that the commission's decision approving this provision of the stipulation was against the manifest weight of the evidence. *See Consumers' Counsel*, 1992-Ohio-122, at ¶ 14; *Indus. Energy Consumers*, 1994-Ohio-435, at ¶ 12. Therefore, we reject appellants' argument.

### 3. *Whether the commission's decision to approve the increased fixed monthly charge to residential customers in conjunction with approving the elimination of Columbia's DSM programs for non-low-income customers is contrary to commission precedent*

{¶ 38} Appellants argue that the commission departed from its own precedent without justification when it approved the provisions of the stipulation allowing Columbia to increase its fixed monthly charge to residential customers while simultaneously eliminating its DSM programs for non-low-income customers. Appellants cite three commission cases decided in 2008 when the

14

commission first approved the SFV rate design for natural-gas distribution companies. *See In re Application of Duke Energy Ohio, Inc.*, PUCO Nos. 07-589-GA-AIR, 07-590-GA-ALT, and 07-591-GA-AAM, 2008 WL 2390285 (May 28, 2008); *In re Application of the East Ohio Gas Co.*, PUCO Nos. 06-1453-GA-UNC, 07-829-GA-AIR, 07-830-GA-ALT, 07-831-GA-AAM, and 08-169-GA-ALT, 2008 WL 4628439 (Oct. 15, 2008); *In re Application of Columbia Gas of Ohio, Inc.*, PUCO Nos. 08-72-GA-AIR, 08-73-GA-ALT, 08-74-GA-AAM, and 08-75-GA-AAM, 2008 WL 5158185 (Dec. 3, 2008). According to appellants, the commission established the SFV rate design in these cases "based on the important role that energy efficiency must play in the utility's portfolio."

{¶ 39} We have instructed the commission to respect its own precedents in its decisions to assure the predictability that is essential in all areas of the law, including administrative law. *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.*, 42 Ohio St.2d 403, 431 (1975), *superseded by statute on other grounds as stated in Babbit v. Pub. Util. Comm.*, 59 Ohio St.2d 81, 89 (1979). But if the commission does decide to depart from precedent, it must explain why and the new course must be substantively reasonable and lawful. *See In re Application of Columbus S. Power Co.*, 2011-Ohio-1788, ¶ 52. As discussed below, appellants have failed to show that the commission departed from precedent and absent that, the commission was not obligated to provide an explanation.

{¶ 40} Appellants contend that by allowing Columbia to increase its fixed monthly charge to residential customers in conjunction with approving the elimination of DSM programs for non-low-income customers, the commission eroded its initial justification for transitioning to the SFV rate design for natural-gas companies—namely, removing the disincentives for the utility to support energy-efficiency programs. And because the commission failed to explain or otherwise justify its departure from its own precedent, the commission's approval of these stipulated provisions, appellants contend, was unlawful.

**{¶ 41}** Appellants' reasoning is flawed. The removal of the disincentives to promote energy-conservation and energy-efficiency measures stems from the SFV rate design itself, not from whether a natural-gas utility has provided energy-efficiency programs to certain classes of customers. By decoupling the recovery of fixed costs from the volume of gas that customers use, the SFV rate design removed the built-in incentive to increase gas sales under the existing rate design that had been preventing natural-gas utilities from promoting energy-conservation and energy-efficiency measures. *See Ohio Consumers' Counsel*, 2010-Ohio-134, at ¶ 36. But the SFV rate design does not require a natural-gas utility to provide specific energy-efficiency programs for a particular class of customers. *See id.* at ¶ 39, citing *Ohio Partners for Affordable Energy v. Pub. Util. Comm.*, 2007-Ohio-4790, ¶ 36. And in fact, CUB conceded before the commission that there is no mandate for utilities to provide DSM programs. 2023 WL 1433900 at ¶ 192. In the end, the elimination of the DSM programs for non-low-income customers, even with the increased fixed monthly charge, was not contrary to commission precedent, because the elimination had no bearing on Columbia's incentive to participate in and support energy-efficiency programs.

**{¶ 42}** Moreover, appellants' argument here fails for another reason: the commission did not eliminate all utility-sponsored energy-efficiency programs in this case. As discussed, under the terms of the stipulation, Columbia will continue to fund WarmChoice, its DSM program for the company's low-income customers. *Id.* at ¶ 55-56, 93, 204. Specifically, through WarmChoice, Columbia will provide over $70 million in weatherization service for low-income customers over five years. *Id.* at ¶ 55-56, 204. Columbia will also fund a customer bill-payment assistance program for low-income customers at no cost to ratepayers. *Id.* at ¶ 98, 177. And under the terms of the stipulation, Columbia will pursue other available non-consumer-funding sources to weatherize properties of low-income customers. *Id.* at ¶ 93, 134.

**B.  Appellants' proposition of law No. 2: whether the evidentiary record supports the commission's finding that the stipulation did not violate any important regulatory principle or practice**

{¶ 43} Appellants argue in their second proposition of law that the commission erred in finding that the stipulation did not violate any important regulatory principle or practice under the third prong of the reasonableness test. Appellants specifically contend that the commission failed to support its finding with substantive evidence in the record, relying only on conclusory testimony from the signatory parties.  Appellants further assert that the commission failed to refute significant evidence that the stipulation's overreliance on fixed monthly charges and rejection of energy-efficiency programs violated several important regulatory principles and practices.

*1.  We lack jurisdiction over appellants' claim that the record is devoid of evidentiary support for the stipulation's compliance with the third prong of the reasonableness test*

{¶ 44} Appellants' first claim that the commission's determination that the stipulation did not violate any important regulatory principle or practice was devoid of evidentiary support.  Appellants maintain that the commission's decision lacks meaningful evidence and a more thorough analysis of the issue.  Appellants specifically challenge the commission's reliance on the testimony of Columbia witness Melissa Thompson, commission-staff witness Lipthratt, and OCC witness Adkins.  According to appellants, these witnesses offered only conclusory testimony regarding the third prong of the reasonableness test and the commission failed to rely on any specific regulatory principles identified by the signatory parties in making its determination, despite the burden to show compliance with the third prong resting with the signatory parties.

{¶ 45} We do not have jurisdiction over this claim, because appellants did not specifically raise it in an application for rehearing before the commission as

required by R.C. 4903.10. *See Ohio Power Co.*, 2014-Ohio-4271, at ¶ 45. On appeal, appellants challenge the commission's reliance on the testimony of Thompson, Lipthratt, and Adkins in determining that the stipulation satisfied the third prong of the reasonableness test. Yet ELPC's application for rehearing did not mention these witnesses at all, and CUB challenged the testimony of these witnesses only regarding the first and second prongs of the reasonableness test. Moreover, appellants never alleged that the signatory parties failed to carry their burden with respect to the third prong or that the commission failed to cite meaningful evidence supporting its conclusion.

{¶ 46} Because appellants did not raise these arguments on rehearing before the commission, we lack jurisdiction over them on appeal. *See Ohio Partners for Affordable Energy*, 2007-Ohio-4790, at ¶ 15.

### 2. Appellants' claim that they demonstrated that the stipulation violated several important regulatory principles

{¶ 47} Appellants also allege that the commission and the signatory parties failed to refute significant evidence that the stipulation violated several important principles of utility regulation. According to appellants, ELPC witness Rábago discussed three principles in particular in his direct testimony that were also articulated by utility scholar James Bonbright: (1) energy efficiency as a principle, (2) the related principle that rates should advance economic efficiency and promote the efficient use of energy, and (3) rates should be fair in apportioning costs. Appellants state that Rábago explained why the stipulation's overreliance on fixed monthly charges to residential customers and elimination of DSM programs for non-low-income customers violated these principles.

*a. Whether the commission violated the regulatory principle of energy efficiency and the related principle that rates should advance economic efficiency and promote the efficient use of energy*

**{¶ 48}** Appellants first claim that the commission violated the regulatory principle of energy efficiency by approving the elimination of DSM programs for non-low-income customers. According to appellants, this bedrock regulatory principle is recognized in the State's energy-efficiency policy set forth in R.C. 4905.70 (requiring the commission to initiate programs that will promote and encourage energy conservation and a reduction of energy consumption) and R.C. 4929.02(A)(12) (declaring it is state policy to promote an alignment of natural-gas-company and consumer interests in energy conservation and efficiency).

**{¶ 49}** We have previously rejected arguments that R.C. 4905.70 and 4929.02(A) require the commission to approve any particular DSM and energy-conservation programs or specific levels of funding for such programs. *See Ohio Partners for Affordable Energy*, 2007-Ohio-4790, at ¶ 36. As we have explained, the policies established in these statutes are guidelines for the commission to weigh when determining whether a utility's services and DSM and energy-conservation programs complied with these provisions. *See Ohio Consumers' Counsel*, 2010-Ohio-134, at ¶ 39, citing *Ohio Partners for Affordable Energy* at ¶ 27; *see also id.* at ¶ 40 ("The General Assembly left it to the commission to determine how best to carry out the state's policy goals in R.C. 4929.02(A)(4) and 4905.70.").

**{¶ 50}** Appellants also allege that the commission violated the related regulatory principle that rates should advance economic efficiency and promote the efficient use of energy. Appellants challenge the commission's continued reliance on the SFV rate design as the proper method to recover natural-gas utility costs. Appellants maintain that the record in this case demonstrated that overreliance on fixed monthly charges reduces incentives for customers to use gas efficiently and fails to send accurate, economically efficient price signals.

{¶ 51} Appellants, however, overlook that we have rejected similar challenges to the SFV rate design, having specifically recognized the economic and energy-efficiency benefits inherent in the SFV rate design. *See Ohio Consumers' Counsel*, 2010-Ohio-134, at ¶ 34-41. Before the adoption of the SFV rate design, the ability of natural-gas utilities to recover fixed distribution costs depended in large part on actual gas sales, even though distribution costs remained fairly constant regardless of how much gas was sold. *Id.* at ¶ 15, 35. This traditional rate design gave utilities an incentive to increase gas sales, which in turn prevented them from embracing energy-conservation and energy-efficiency efforts. *Id.* at ¶ 35. The SFV rate design decoupled the utility's recovery of the cost of delivering gas from the amount of gas customers actually used, thereby reducing the utility's incentive to sell more gas and in turn removing any disincentives to promote energy conservation and efficiency. *Id.* at ¶ 35-36.

{¶ 52} In addition, we recognized that the SFV rate design provided economic benefits by providing customers with more accurate and timely price signals that are based on the actual costs of delivery. *Id.* at ¶ 37. Given the significant impact that gas usage has on customer bills, customers still receive the benefits of any energy-conservation efforts under the SFV rate design. *Id.* Another added economic benefit was that the SFV rate design produced more stable customer bills by spreading the recovery of fixed costs more evenly through all seasons. *Id.* at ¶ 36.

{¶ 53} In this case, the commission found that continued reliance on the SFV rate design did not violate any important regulatory principle or practice. 2023 WL 1433900 at ¶ 198-204. The commission specifically rejected CUB witness Bullock's testimony that increasing the fixed monthly charge alone would reduce the incentive to conserve energy. *Id.* at ¶ 173. Rather, the commission determined that allowing Columbia to recover its fixed costs through a fixed monthly charge eliminates any disincentive for Columbia to support energy-conservation and

energy-efficiency efforts that would result if Columbia reverted to an increased reliance on volumetric rates to recover its fixed distribution costs. *Id.* at ¶ 202. The commission also found that the SFV rate design sends a true and accurate price signal to customers for the purpose of making energy-efficiency investments, while also providing economic efficiency. *Id.* at ¶ 201. The commission explained that customers can still reduce the cost of the commodity portion of their bills, which varies based on the amount of natural gas that is consumed, by conserving or implementing energy-efficiency measures, informed by the accurate price signal sent by natural-gas commodity prices. *Id.* And the commission found that the SFV rate design provides an equitable cost allocation among residential customers because the costs of providing distribution service are principally fixed, and each residential customer should bear an equal portion of the distribution costs. *Id.* at ¶ 172, 200.

{¶ 54} Moreover, the commission supported its determination to continue the SFV rate design in this case with record evidence. *See id.* at ¶ 198-202. Thus, to reverse the commission on this finding, appellants would have to show that the converse was true, namely that the commission's finding lacked record support or that the finding was against the manifest weight of the evidence. *See In re Application of Duke Energy Ohio, Inc.*, 2012-Ohio-1509, ¶ 32. Yet appellants have not shown that the evidence cited by the commission was faulty or that the weight of the evidence unquestionably compelled a decision in their favor. In the pertinent section of their merit brief, appellants point to their own contrary evidence, while ignoring the evidence relied on by the commission. Faced with such contradictory evidence, the commission was entitled to find in favor of the signatory parties on the SFV-rate-design issue. And as explained, reweighing the evidence is outside the scope of our function on appeal. *Util. Serv. Partners*, 2009-Ohio-6764, at ¶ 35.

*b. Whether the commission violated the regulatory principle that rates should be fair in apportioning costs*

{¶ 55} Appellants argue that the record is replete with evidence that the increased fixed monthly charge to residential customers approved in this case is economically regressive and unfair toward low-volume users and low-income residential customers.   Appellants contend that increased charges are discriminatory and inequitable because low-volume users do not put the same strain on the system as high-volume users and that the commission's allowing the increase of the fixed monthly charge does not align with cost-causation regulatory principles.   Appellants further assert that the evidence shows that the increased fixed monthly charge in this case creates a cross-subsidy from low-volume users and low-income customers to higher-volume users and higher-income customers because all residential customers pay the fixed monthly charge regardless of the amount of usage.   And finally, appellants claim that the evidence shows that the "dramatic" increase in the fixed monthly charge makes a higher portion of a customer's bill unavoidable and impedes the ability of low-income customers to reduce their natural-gas bills.

{¶ 56} The commission acknowledged appellants' arguments against the stipulation on this issue but ultimately ruled in favor of the signatory parties.  *See* 2023 WL 1433900 at ¶ 188-189, 192, 198.  The commission expressly rejected claims that the increased fixed monthly charge violated the regulatory principle of fairness, recognizing that the "SFV rate design provided a more equitable cost allocation among residential customers because the costs of providing distribution service are principally fixed, and each residential customer should bear an equal proportion of the distribution costs."  *Id.* at ¶ 200.  The commission also found that testimony from Columbia witness Feingold demonstrated that the fixed charge under the SFV rate design promotes fairness to all customers because it provides the actual average cost of providing natural-gas delivery service as opposed to

being based on the volume of gas consumed.  *Id.*  The commission further noted that Feingold's testimony demonstrated that the "SFV rate design results in rates that track embedded costs more accurately, eliminating intra-class subsidies and undue discrimination in the residential and small commercial classes."  *Id.*

{¶ 57} Appellants do not address the commission's determination on this issue, let alone offer an argument calling the commission's evidence or reasoning into question.  A party who contends that rates or charges are unreasonable has the burden on appeal under R.C. 4903.13 of showing that the commission's order is unjust, unlawful, or unreasonable.  *Columbus S. Power Co.*, 2011-Ohio-1788, at ¶ 56.  At best, appellants offer an alternative take on the evidence, but they must do much more to reverse the commission's orders on these facts.  Because appellants give no reason to reverse the commission on this issue, we reject their argument.  *See Duke Energy Ohio*, 2012-Ohio-1509, at ¶ 32.

*c.  Whether the record supported the commission's defense of its finding that the stipulation did not violate any regulatory principles*

{¶ 58} The appellants' final claim is that the commission failed to discuss the magnitude of the total increase in the fixed monthly charge in tandem with the elimination of Columbia's energy-efficiency programs for non-low-income customers.  Contrary to appellants' assertion, the commission did examine the rate impact of its decision on customers.  To begin, the commission discussed ELPC's argument that Columbia was requesting an increase of the fixed monthly charge from its current delivery charge of $17.81 to $58.01 in total fixed charges[6] by 2027.  2023 WL 1433900 at ¶ 147.  Likewise, the commission discussed claims from CUB and OPAE that Columbia's fixed rates are too high for the services that Columbia provides.  *Id.* at ¶ 151.  In addition, the commission determined that the reduction

---

6. The total fixed monthly charge is made up of four parts: (1) monthly delivery charge, (2) infrastructure-replacement-program rider, (3) capital-expenditure-program rider, and (4) infrastructure-development rider.

of the revenue increase from the amount that Columbia had proposed was a key benefit of the stipulation. *Id.* at ¶ 133. The commission also found that Columbia's investment of $70 million over five years in the WarmChoice program was appropriate in size and scale to provide weatherization services to at-risk customers while still mitigating the rate impact on all customers. *Id.* at ¶ 56. And finally, the commission noted that Columbia would receive no shared savings or administrative fees from the WarmChoice program and would fund a customer bill-payment assistance program without funding from ratepayers. *Id.* As such, appellants have failed to show that the commission failed to discuss the magnitude of the total increase in the fixed monthly charge in tandem with the elimination of Columbia's energy-efficiency programs for non-low-income customers.

## IV. CONCLUSION

{¶ 59} Appellants have failed to demonstrate reversible error in the commission's decision approving the stipulation in this case. Therefore, we affirm the commission's orders.

Orders affirmed.

––––––––––––––––––

Erica S. McConnell, Robert Kelter, and Daniel Abrams, for appellant Environmental Law & Policy Center.

Hubay Dougherty and Trent Dougherty, for appellant Citizens' Utility Board of Ohio.

D. Andrew Wilson, Attorney General, John H. Jones, Public Utilities Section Chief, and Julian P. Johnson, Ambrosia E. Wilson, and Ashley M. Wnek, Assistant Attorneys General, for appellee.

Melissa L. Thompson and John R. Ryan; and Porter, Wright, Morris & Arthur, L.L.P., Eric B. Gallon, and L. Bradfield Hughes, for intervening appellee, Columbia Gas of Ohio, Inc.

Karin Nordstrom and Chris Tavenor, urging reversal for amicus curiae, Ohio Environmental Council.

_____